A04A1444. COHEN v. NUDELMAN.
(604 SE2d 580)

RUFFIN, Presiding Judge.

Heidi Cohen and Richard Nudelman divorced in January 1992. According to the settlement agreement incorporated into the final divorce decree, the marriage produced two sons, J. N. and S. N., and Nudelman agreed to pay child support for both boys. In July 2001, however, Nudelman moved to set aside the paternity and child support determinations as to J. N. Alleging that J. N. is not his biological child, Nudelman sought relief from any future support obligations, as well as reimbursement for all previous support payments.

Following a hearing on August 15, 2003, the trial court granted Nudelman's motion. The court's order relieved Nudelman of all future support obligations relating to J. N., directed Cohen to reimburse Nudelman for $55,260 in past support payments, and awarded

---

[11] See *Swan*, supra.

Nudelman $25,000 in litigation expenses. We granted Cohen's application for discretionary appeal, and for reasons that follow, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

1. Citing newly discovered evidence regarding J. N.'s paternity, Nudelman sought to set aside the prior paternity determination through an extraordinary motion for new trial. In resolving such motion, the trial court sits as the trier of fact, and its decision will be upheld absent a manifest abuse of discretion.[1] Furthermore, we must accept the trial court's factual findings if any evidence supports them.[2]

The record shows that, pursuant to the original divorce decree and settlement agreement, Cohen received primary physical custody of six-year-old J. N. and seven-year-old S. N. Nudelman agreed to pay child support for both boys, who, according to the settlement agreement, were "born as a result of [the] marriage."

On October 2, 1996, however, Nudelman's counsel wrote Cohen's attorney regarding a dispute over child support and medical expense payments. In the letter, counsel stated that Nudelman "ha[d] learned that he is not the biological father of [J. N.]" The following month, Nudelman petitioned the court to award him custody of both boys. In connection with that litigation, Nudelman served interrogatories on Cohen and asked: "Is Richard Nudelman the biological father of [J. N.]?" Cohen responded, "[y]es."

In July 1997, Cohen and Nudelman reached a settlement and entered a new agreement modifying their rights and obligations "with respect to the minor children of the parties." Under the new agreement, the parties retained joint legal custody of both children. But whereas Cohen continued to have physical custody over J. N., J. N.'s brother was placed in Nudelman's custody. Cohen and Nudelman each were responsible for making child support payments to the other.

In July 1999, Nudelman obtained DNA testing showing that he is not the biological father of J. N. Two years later, Nudelman filed his petition for extraordinary relief, citing the DNA report as evidence of nonpaternity. Through his verified pleading, Nudelman asserted that, until he received the DNA test results, he believed that he was J. N.'s father.

---

[1] See *City of Gainesville v. Waters*, 258 Ga. App. 555, 562 (6) (574 SE2d 638) (2002); *Harrell v. State*, 70 Ga. App. 521-522 (28 SE2d 821) (1944).

[2] See *Waters*, supra at 560 (5).

Under our Supreme Court's decision in *Roddenberry v. Roddenberry*, a prior consent judgment regarding paternity and child support can be set aside through an extraordinary motion for new trial based on newly discovered evidence.[3] To obtain such relief, the movant must show:

> (1) that the newly discovered evidence has come to his knowledge since the trial; (2) that want of due diligence was not the reason that the evidence was not acquired sooner; (3) that the evidence was so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness is attached to the motion or its absence accounted for; and (6) that the new evidence does not operate solely to impeach the credit of a witness.[4]

Applying these factors, the trial court concluded that Nudelman was entitled to extraordinary relief and set aside all prior judgments regarding child support. Although Cohen challenges the trial court's findings as to each factor, sufficient evidence supports its ruling.

(a) Cohen first argues that Nudelman failed to present any *newly discovered* evidence. In particular, she argues that Nudelman knew of the paternity issue before their divorce was finalized and thus cannot show that the evidence came to his knowledge since the "trial" — or entry of the final divorce decree. To support this claim, she cites affidavits in the record from two individuals who testified that Nudelman questioned J. N.'s paternity during the divorce proceedings. Cohen further argues that, even if Nudelman had no suspicion about J. N.'s paternity before the divorce, he certainly questioned the paternity in October 1996, when his attorney asserted that he was not J. N.'s father.

Despite this evidence, the trial court determined as a matter of fact that Nudelman discovered in June or July 1999 that he is not J. N.'s biological father. We find no error. Nudelman offered evidence through a verified pleading that he believed he was J. N.'s father until he received the results from the June 1999 DNA test.[5] He also presented an affidavit from his former attorney who wrote the

---

[3] 255 Ga. 715, 717 (342 SE2d 464) (1986). See also *Dept. of Human Resources v. Browning*, 210 Ga. App. 546, 547 (1) (a) (436 SE2d 742) (1993) (noting that in *Roddenberry*, "the Supreme Court recognized an extraordinary motion for new trial (based on newly discovered evidence) as a proper procedural vehicle for challenging a consent judgment which resolved issues of paternity and child support").

[4] (Punctuation omitted.) *Roddenberry*, supra.

[5] See *BEA Systems v. WebMethods, Inc.*, 265 Ga. App. 503, 504 (595 SE2d 87) (2004) (noting that a verified complaint serves as both pleading and evidence); *Weekes v. Nationwide Gen. Ins. Co.*, 232 Ga. App. 144, 149 (3) (b) (500 SE2d 620) (1998) (" 'Verified pleadings have been held

October 2, 1996 letter to Cohen's counsel. That attorney testified that he did not write the letter based on Nudelman's knowledge of paternity. Instead, the attorney "decided to question the paternity based on a statement made to . . . Nudelman by a former friend of . . . Cohen." And after Cohen stated in her verified interrogatory responses that Nudelman was J. N.'s father, Nudelman entered the modified settlement based on the assumption that he actually was the father.

Although the record contains conflicting evidence, the trial court, as factfinder, resolved these conflicts in Nudelman's favor and determined that Nudelman discovered the information about J. N.'s paternity in 1999, *after* the divorce proceedings and execution of the 1997 modification agreement. Because this finding is supported by some evidence, we will not disturb it.[6]

(b) Next, Cohen argues that Nudelman failed to exercise diligence in investigating the paternity issue. She again points to his alleged knowledge both before the divorce proceeding and in 1996. The trial court, however, found that he had no knowledge until 1999. And the record shows that when Nudelman presented his suspicions to Cohen in 1996, she swore that he was, in fact, J. N.'s father. Finally, at the hearing on Nudelman's extraordinary motion, Cohen admitted that, during the time when J. N. was conceived, she had sexual intercourse on one occasion with someone other than Nudelman. According to Cohen, she had "never admitted to this before and [had] never told anybody." She further agreed that this individual possibly fathered J. N.

We find no error in the trial court's determination that Nudelman exercised due diligence in discovering the evidence. Presented with a question about J. N.'s paternity in 1996, Nudelman asked Cohen whether he was the father, and she replied "yes," without indicating that another man possibly fathered the boy. Although he arguably could have obtained a DNA test at that point, the trial court did not abuse its discretion in refusing to view his failure to do so as a lack of diligence.

Finally, we cannot agree with Cohen's vague assertion that Nudelman failed to exercise diligence by waiting two years after the

---

to be equivalent to a supporting or opposing affidavit for purposes of raising an issue of fact on summary judgment.' ").

[6] See *Waters,* supra. We find no merit in Cohen's claim that the statement in the October 2, 1996 letter demands judgment in her favor. We similarly reject Cohen's claim that "[t]he theories of res judicata and collateral estoppel vitiate [Nudelman's] claim of newly discovered evidence after" execution of the modified settlement agreement in 1997. See *Browning,* supra ("[T]he doctrines of res judicata and estoppel by judgment are inapposite when . . . a consent judgment is under attack via extraordinary motion for new trial [based on newly discovered evidence].").

DNA test to file his extraordinary motion, during which time he continued to pay child support pursuant to the modified settlement agreement. *Roddenberry*'s due diligence criteria relates to diligence in discovering the evidence — not diligence in filing a motion for new trial. And we can hardly find a lack of diligence in Nudelman's decision to comply with the court-ordered support payments.

(c) According to Cohen, the trial court erred in concluding that the paternity evidence was material, would have produced a different outcome in the divorce proceedings, and was not cumulative. We disagree. Evidence establishing that J. N. is not Nudelman's son certainly would have altered the final divorce decree, which obligated Nudelman to pay significant sums in child support. And we find no merit in Cohen's assertion that the paternity evidence was "merely cumulative evidence supporting what [Nudelman] already knew."

(d) Cohen claims that Nudelman failed to attach to his extraordinary motion an affidavit regarding the newly discovered evidence or to otherwise account for the affidavit's absence. As noted by the trial court, however, Nudelman verified his motion, in which he asserted that the June 1999 DNA test revealed he is not J. N.'s father. Nudelman further asserted that, until he received those results, he believed that he was the father. We find no error in the trial court's conclusion that Nudelman adequately satisfied the affidavit requirement.[7]

(e) Finally, Cohen claims that the newly discovered evidence serves no purpose other than to impeach her credibility. Again, we disagree. The new evidence shows that Nudelman is not J. N.'s father.[8] Although such evidence certainly impeaches Cohen's claim that he is the father, that is not its sole purpose.

2. At several points in her brief, Cohen argues that Nudelman's motion failed to meet the requirements of OCGA § 19-7-54. That provision, which became effective after Nudelman filed his motion, but before the trial court ruled, establishes a statutory procedure for setting aside a paternity determination based upon newly discovered evidence.[9]

At the hearing on Nudelman's motion, the parties discussed whether OCGA § 19-7-54 applies retroactively to this case and, if so,

---

[7] See *Weekes*, supra.

[8] The 1999 DNA test report obtained by Nudelman has potential chain-of-custody and resulting admissibility problems. Apparently concerned about this issue, the trial court ordered that new DNA tests be conducted and the results submitted to the court under seal for consideration in the court's final determination. We have been unable to find these test results in the record, and neither party has provided a helpful record cite. Cohen, however, does not dispute that the tests were conducted and submitted to the trial court, or that the results support Nudelman's claim of nonpaternity.

[9] See OCGA § 19-7-54.

whether Nudelman had met the statutory requirements. The trial court's ruling, however, is clearly based upon the criteria set forth in *Roddenberry*. And nothing in OCGA § 19-7-54 prohibits the trial court from issuing a decision using the *Roddenberry* standard, rather than the statutory mechanism.[10] Accordingly, we find no merit in Cohen's claim that OCGA § 19-7-54 demands reversal.

3. Cohen also argues that allowing Nudelman to "delegitimize" J. N. violates public policy. The Supreme Court, however, has sanctioned a method for challenging paternity based on newly discovered evidence, and the trial court found that Nudelman met the necessary requirements for raising such challenge. Furthermore, as noted above, the legislature recently established a statutory procedure for challenging a prior paternity determination. Although the trial court based its ruling on *Roddenberry*, the legislature's action further shows that an order setting aside a paternity determination following the discovery of new evidence does not violate Georgia public policy.

4. The trial court, therefore, did not err in setting aside the prior judgments relating to paternity and child support. Nevertheless, we agree with Cohen that the trial court improperly ordered her to reimburse Nudelman for over $55,000 in child support payments he has made since the divorce. Nothing in *Roddenberry* supports such an award, and the new statutory procedure specifically limits the monetary relief available to "the issues of prospective child support payments [and] past due child support payments."[11] The legislature could have permitted a putative father who successfully sets aside a paternity determination to recoup past support payments, but it did not do so. And we have found no case law that otherwise authorizes such recovery through an extraordinary motion for new trial based on newly discovered evidence.

Assuming, for the sake of argument, that past child support payments can be recovered as damages in a fraud action,[12] the trial court erred to the extent it awarded such damages at this point.[13]

---

[10] See OCGA § 19-7-54 (c) (providing that if the movant cannot meet the statutory requirements for setting aside the paternity determination, "the court may grant the motion or enter an order as to paternity, duty to support, custody, and visitation privileges *as otherwise provided by law*") (emphasis supplied).

[11] See OCGA § 19-7-54 (d).

[12] See *Butler v. Turner*, 274 Ga. 566, 569-570 (2) (555 SE2d 427) (2001) (mother may bring fraud action against father of child who fraudulently misrepresented income to reduce child support obligations); *Ghrist v. Fricks*, 219 Ga. App. 415, 422 (4) (465 SE2d 501) (1995) (evidence supported fraud verdict in action brought by former husband against his ex-wife on grounds that ex-wife fraudulently led him to believe that he was father of child born during marriage).

[13] On appeal, Cohen argues that public policy should prohibit an ex-husband from suing an ex-wife for fraud based on misrepresentations regarding paternity. Cohen, however, has not shown that she raised this argument below, and we will not address such argument for the first time on appeal. See *Clark v. Chick-Fil-A*, 214 Ga. App. 758, 759 (1) (449 SE2d 313) (1994).

Nudelman filed an extraordinary motion for new trial to set aside a child support determination. In his pleading, he also sought "relief" based on Cohen's alleged fraud and arguably stated a tort claim for fraud. Cohen, however, clearly believed that the trial court was only addressing the motion for new trial at the August 15, 2003 hearing. In fact, Cohen's counsel specifically stated that the hearing involved "a motion," rather than a trial. Neither the trial court nor Nudelman's counsel disputed this statement, and nothing in the record indicates that the trial court set August 15, 2003, as a trial date for resolving a tort claim. Nonetheless, the trial court essentially treated the hearing as a bench trial for the fraud allegations and awarded damages, finding that Cohen had "acquired [past child support payments] by fraud."

Due process demands that a litigant be given "reasonable notice and opportunity to be heard, and to present its claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it."[14] We cannot find that the trial court's award of previously paid child support satisfies due process. As noted above, such award is not a proper remedy in a motion for extraordinary new trial based on newly discovered evidence. Furthermore, although Nudelman may have alleged a separate fraud claim sounding in tort, Cohen received no notice that this claim might be resolved and damages imposed following the hearing. Thus, she had no reasonable opportunity to defend against the claim or the trial court's ultimate conclusion that she acquired funds by fraud. Accordingly, we must reverse the trial court's order to the extent it finds Cohen liable in tort for fraud, vacate the award of $55,260 in past child support payments, and remand the case for further proceedings on any properly raised fraud allegations.[15]

5. Finally, Cohen argues that the trial court erred in awarding Nudelman $25,000 in "expenses of litigation, based upon [her] actions, including her actions relating to the discovery issues and disputes which arose in this case." Although the trial court's order does not specify a legal basis for the award, Nudelman claims on appeal that the trial court properly awarded him litigation expenses pursuant to OCGA § 9-11-37 (a) (4) (A), which provides:

---

[14] (Punctuation omitted.) *In the Interest of B. A. S.*, 254 Ga. App. 430, 442 (9) (563 SE2d 141) (2002).

[15] See *Maples v. Seeliger*, 165 Ga. App. 201, 202 (1) (299 SE2d 906) (1983) (setting aside contempt finding because trial court failed to give alleged contemnor reasonable notice and an opportunity to be heard); see also *Coweta County v. Simmons*, 269 Ga. 694 (507 SE2d 440) (1998) ("There having been no notice to [the defendant] that the [court] might consider the merits of the issue of his alleged negligence, a holding that he was liable, tantamount to an award of summary judgment against him, would deny him due process.").

> If [a motion to compel] is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

This provision, however, only permits recovery of expenses incurred in obtaining an order compelling discovery. And, given the language used by the trial court, it does not appear that the $25,000 award relates solely to such expenses. Furthermore, Nudelman has not pointed us to any evidence in the record showing that he spent $25,000 to obtain an order compelling discovery.

Under these circumstances, we are uncertain whether the trial court's litigation expense award is based on OCGA § 9-11-37 (a) (4) (A), some other provision, or a combination of provisions. We are unable, therefore, to properly review the award. Accordingly, we must vacate the $25,000 award and remand for further clarification by the trial court.[16]

*Judgment affirmed in part, reversed in part, vacated in part and case remanded. Eldridge and Adams, JJ., concur.*

---

DECIDED SEPTEMBER 9, 2004 — 

*Simmons & Szczecko, M. T. Simmons, Jr., Joseph Szczecko, Jean M. Kutner,* for appellant.
*Randall M. Kessler,* for appellee.

---

[16] See *Cotting v. Cotting,* 261 Ga. App. 370, 371-372 (2) (582 SE2d 527) (2003); *Easler v. Fuller,* 169 Ga. App. 110, 111 (311 SE2d 534) (1983).