A07A2459. IN THE INTEREST OF T. W. et al., children.

(654 SE2d 218)

BLACKBURN, Presiding Judge.

Andrew Tatum, the putative father of T. W. and R. W., appeals the juvenile court's order, which approved the State's plan for non-reunification and further required that he submit to genetic testing to establish paternity and maintain his standing in this matter. Tatum argues that paternity has already been established and that the evidence was insufficient to support the court's nonreunification order. For the reasons set forth below, we affirm in part and reverse in part.

On appeal from an order approving plans for nonreunification, we construe the evidence in favor of the judgment and determine whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided. *In the Interest of J. P.*[1] "We neither weigh the evidence nor determine the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met." (Punctuation omitted.) *In the Interest of K. R.*[2]

So construed, the evidence shows that Jasmine Williams (the "mother"), who was then in a relationship with Tatum, gave birth to twins T. W. and R. W. on August 21, 2005. On April 20, 2006, the Department of Family and Children Services ("DFCS") removed the then eight-month-old children from their mother's and Tatum's custody based on the mother's inability to properly care for them and placed them in foster care. Several days later, DFCS filed a complaint for deprivation, which alleged among other things: the children were without proper parental care; the mother was unemployed; the mother was mentally handicapped; the mother had failed to attend WIC or food stamp appointments; and the mother and Tatum had criminal charges against them. On May 4, 2006, the juvenile court

---

[1] *In the Interest of J. P.*, 253 Ga. App. 732, 735 (560 SE2d 318) (2002).
[2] *In the Interest of K. R.*, 270 Ga. App. 296 (605 SE2d 911) (2004).

issued an initial order, finding by clear and convincing evidence that the children were deprived. Thereafter, a reunification case plan was created, which required Tatum and the mother to obtain stable income, housing, and childcare services; make scheduled appointments; and attend parenting classes. On July 5, 2006, following a hearing, the juvenile court issued an order declaring the children deprived.

On August 3, 2006, Tatum and the mother acknowledged Tatum's paternity with regard to T. W. and R. W. On November 10, 2006, Tatum and the mother married and changed the children's birth certificates to indicate Tatum as their father. However, because the mother had confided to a DFCS caseworker that she was unsure whether Tatum or another man was the children's father, DFCS moved the court to require that Tatum submit to genetic testing to establish paternity. On October 31, 2006, following a hearing on the matter, the juvenile court ordered Tatum to submit to genetic testing and further stated that it would presume that he was not the father if he failed to do so.

On April 3, 2007, DFCS filed a permanency plan for T. W. and R. W. with the juvenile court, which requested nonreunification and an extension of DFCS's temporary custody of the children. A hearing on these matters was held on May 17, 2007. At the start of the hearing, the juvenile court was informed that Tatum still had not complied with the court's earlier order that he submit to genetic testing to establish the paternity of the children. Consequently, the court ruled that Tatum would only be considered the putative father and would not have standing in the matter until he submitted to testing.

At the hearing, a psychologist testified that the mother was mentally handicapped and that she had significant limitations, which raised concerns as to whether she could properly care for her children, particularly given the fact that one of them suffered from health problems. The psychologist testified that Tatum had previously been incarcerated for threatening his ex-wife and stalking her and her children. He further testified that Tatum was attending anger management classes as ordered by his probation officer and that he exhibited paranoid as well as psychopathic personality tendencies. The psychologist ultimately opined that Tatum's ability to care for the children was "very much in question." In addition, a DFCS caseworker testified at the hearing that the mother and Tatum had not fully complied with the reunification case plan. Specifically, she testified that the mother and Tatum had not maintained consistent housing or employment; that neither had contributed to the children's financial support; that they had only attended one of the scheduled psychological evaluation sessions; and that they had not

completed parenting classes. The caseworker also testified that DFCS had been unable to find any of the mother's relatives sufficiently suitable to care for the children.

The children's mother confirmed in her testimony that she was unemployed and that her only source of income was her disability payments. She further confirmed that she had not provided financial support for the children; that she had moved several times in the last year; and that she had missed some of the scheduled parenting classes. Additionally, the mother testified that Tatum was T. W.'s and R. W.'s father and that he had acknowledged paternity. Tatum also testified at the hearing and confirmed that he had not provided financial support for the children and was unemployed save for some landscaping work he did for his grandparents. He claimed that he was unable to work because of a heart condition but that he had been denied disability benefits. Tatum further admitted that he was currently on probation after pleading guilty to stalking and threatening his ex-wife and her children and that he had been arrested on domestic violence charges relating to an incident with his current wife. Tatum also testified that he was the children's father.

At the conclusion of the hearing, the juvenile court extended DFCS's custody of the children and ordered Tatum to submit to genetic testing to establish paternity within 30 days. The court also found, once again, that the children were deprived and approved DFCS's plan for nonreunification. On June 5, 2007, the juvenile court issued a written order to this effect, reiterating its grant of DFCS's motion for nonreunification on the ground the reasonable efforts to reunify the family were not appropriate. This appeal followed.[3]

1. Tatum contends that the trial court erred in finding that he had not established his paternity as to the children and therefore had no standing in this matter or future related proceedings. We agree. OCGA § 19-7-46.1 (b) provides in part:

> When both the mother and the father have signed a voluntary acknowledgment of paternity and the acknowledgment is recorded in the putative father registry established by subsection (d) of Code Section 19-11-9, the acknowledgment shall constitute a legal determination of paternity, subject to the right of any signatory to rescind the acknowledgment prior to the date of the support order, any other order adjudicating paternity, or 60 days from the signing of the agreement, whichever is earlier.

---

[3] The mother did not appeal the juvenile court's nonreunification order.

In addition, OCGA § 19-7-20 (c) provides that "[t]he marriage of the mother and reputed father of a child born out of wedlock and the recognition by the father of the child as his shall render the child legitimate; in such case the child shall immediately take the surname of his father."

Here, Tatum married the children's mother and recognized the children as his own pursuant to OCGA § 19-7-20 (c). In addition, both the mother and Tatum signed a voluntary acknowledgment of paternity, which indicated that Tatum was the father of T. W. and R. W., and which was apparently duly recorded. In fact, DFCS has not disputed Tatum's acknowledgment of paternity as provided by OCGA § 19-7-46.1 (b). Therefore, the acknowledgment constitutes a legal determination of Tatum's paternity with regard to the children. Furthermore, although DFCS moved the court to order Tatum to submit to genetic testing to establish paternity, there is no evidence in the record that DFCS supported its motion with a sworn statement either alleging or denying his paternity as required by OCGA § 19-7-43 (d). Thus, DFCS's motion failed to fully comply with the statute, and the juvenile court erred in granting that motion. Moreover, we note that this court has held repeatedly that public policy is not advanced by the disestablishment of legitimacy and paternity. See *Grice v. Detwiler.*[4] Accordingly, we reverse the part of the juvenile court's order that required Tatum to submit to genetic testing and which held that he lacked standing in any future related proceedings until he submitted to such testing.

2. Tatum also contends that the evidence presented at the juvenile court hearing was insufficient to support the court's nonreunification order. We disagree. OCGA § 15-11-58 (h) provides, in relevant part:

> When reviewing the determination by the Division of Family and Children Services of the Department of Human Resources that a reunification plan is not appropriate, the court shall determine by clear and convincing evidence whether reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, should not be provided or should be terminated. There shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that: (1) The parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family . . . [or] (3) Any of the grounds for

---

[4] *Grice v. Detwiler*, 227 Ga. App. 280, 283 (488 SE2d 755) (1997).

terminating parental rights exist, as set forth in subsection (b) of Code Section 15-11-94. . . .

The grounds for termination of parental rights include a medically verifiable deficiency of the parent's physical, mental, or emotional health which prevents the parent from adequately providing for the children's needs, and egregious conduct or evidence of past egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature. OCGA § 15-11-94 (b) (4) (B) (i) and (iv). "We have held that the existence of any one of the foregoing criteria is sufficient to support a presumption that further reunification efforts should not be provided." *In the Interest of U. B.*[5]

Here, at least some evidence shows that Tatum unjustifiably failed to comply with the case plan goals to provide financial support for the children, to maintain stable housing and employment, and to attend all scheduled psychological evaluations. Furthermore, at least some evidence indicates that Tatum has exhibited paranoid and psychopathic personality tendencies to the extent that his ability to care for the children is severely impaired. In addition, evidence indicated that Tatum had been convicted of threatening his ex-wife and stalking her and her children and thus had engaged in actions which constituted egregious conduct toward those children. Given these facts, the juvenile court could have found clear and convincing evidence which showed that reunification with Tatum would not be in the best interests of the children. See *In the Interest of S. A.*[6] (father's failure to comply with case plan goals justified nonreunification order); *In the Interest of U. B.*, supra, 246 Ga. App. at 331 (2) (nonreunification supported by deficiencies in the father's mental health and his past egregious conduct toward children). Accordingly, the trial court did not err in approving nonreunification.

*Judgment affirmed in part and reversed in part. Ruffin and Bernes, JJ., concur.*

DECIDED NOVEMBER 9, 2007.

*James L. Hardin, Martin H. Eaves*, for appellant.

---

[5] *In the Interest of U. B.*, 246 Ga. App. 328, 331 (2) (540 SE2d 278) (2000).

[6] *In the Interest of S. A.*, 263 Ga. App. 610, 613 (588 SE2d 805) (2003).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, John D. Staggs, Jr.,* for appellee.