A10A1617. VENABLE v. PARKER.
(706 SE2d 211)

BARNES, Presiding Judge.

After Mark Parker executed a voluntary acknowledgment of paternity stating that he was the natural father of the child born to Meranda Venable, the trial court entered a final order establishing paternity and child support. Several months after the final order establishing paternity, Parker filed a motion to set aside his voluntary acknowledgment of paternity and the final order on the grounds

of fraud and material mistake of fact. Following an evidentiary hearing, the trial court denied Parker's motion to set aside but nevertheless ordered the parties to undergo genetic testing to establish paternity of the child. We granted Venable's application for discretionary review of the trial court's order and now reverse.

The record shows that on May 9, 2008, Venable gave birth to a son. It is undisputed that Venable and Parker engaged in one sexual encounter approximately nine months prior to the child's birth.

On June 4, 2008, Venable and Parker signed a voluntary acknowledgment of paternity indicating that Parker was the natural father of the minor child (the "Paternity Acknowledgment"). See OCGA § 19-7-46.1 (b).[1] The Paternity Acknowledgment expressly stated that Parker could rescind his acknowledgment within 60 days of his signature on the form, or up to the date of an order establishing paternity, whichever occurred first. It further provided that after the rescission period ended, the signed acknowledgment would "constitute a legal determination of paternity and [could] be challenged in a court of law only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the person challenging the acknowledgment." Additionally, the Paternity Acknowledgment stated that by signing the form, and after 60 days had passed, Parker would "have given up [his] rights to DNA testing." The Paternity Acknowledgment was duly recorded in Georgia's putative father registry, and Parker did not seek rescission within 60 days from signing it.

On December 5, 2008, Venable filed a verified petition to establish paternity and child support, pointing out that Parker had signed the duly recorded Paternity Acknowledgment. That same day, the parties entered into a settlement agreement establishing paternity and child support. On December 11, 2008, the trial court entered a final order establishing paternity and child support that incorporated the terms of the parties' settlement agreement by express reference (the "Final Order"). The Final Order noted that the Paternity Acknowledgment had been signed by both parties and recorded in the putative father registry "and therefore constitute[d]

---

[1] OCGA § 19-7-46.1 (b) provides in relevant part:

When both the mother and father have signed a voluntary acknowledgment of paternity and the acknowledgment is recorded in the putative father registry established by subsection (d) of Code Section 19-11-9, the acknowledgment shall constitute a legal determination of paternity, subject to the right of any signatory to rescind the acknowledgment prior to the date of the support order, any other order adjudicating paternity, or 60 days from the signing of the agreement, whichever is earlier. . . .

Once the window for rescission closes, "the signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the person challenging the acknowledgment." OCGA § 19-7-46.1 (c).

a legal determination of paternity." The Final Order also obligated Parker to pay monthly child support.

On April 28, 2009, Parker consented to an order allowing for an automatic deduction of child support payments from his wages. One month later, however, Parker moved to set aside the Paternity Acknowledgment and the Final Order based upon fraud and material mistake of fact pursuant to OCGA §§ 19-7-46.1 (c) and 9-11-60 (d) (2). According to Parker, he had recently learned that Venable was involved with another man at the time of their sexual encounter, raising "a strong probability" that he was not the father of her child. Parker further alleged that because Venable had fraudulently misrepresented the child's paternity, he was "entitled to have the paternity acknowledgment and judgment set aside and be given an opportunity to have a paternity test."

The trial court held an evidentiary hearing on the motion to set aside, at which both Venable and Parker testified. Venable testified that she had no sexual partners, other than Parker, around the time that her son was conceived. She further testified that Parker had declined to undergo genetic testing on two separate occasions after her son was born.

Parker testified that he filed his motion to set aside upon learning that Venable had "multiple sex partners" around the time of their sexual encounter. Parker further claimed that he would not have signed the Paternity Acknowledgment if he had doubted that he was the father of the child. At other points in his testimony, however, Parker stated that he already knew that Venable had other sexual partners, and thus was doubtful that he was the father of the child, when he signed the Paternity Acknowledgment. According to Parker, he signed the Paternity Acknowledgment despite his doubts over paternity because Venable had threatened to tell his wife about the sexual encounter and the child if he did not sign it.

Following the hearing, the trial court found that Parker's testimony was contradictory and did not support an order setting aside the Paternity Acknowledgment and Final Order on the ground of fraud or material mistake of fact. The court further found that Parker had not met the statutory requirements for disestablishing paternity under OCGA § 19-7-54.[2] Based upon these findings, the

---

[2] OCGA § 19-7-54 sets forth the statutory criteria for a male paying child support to disestablish a prior determination of paternity, but one of the criteria is that he must not have signed a voluntary acknowledgment of paternity under OCGA § 19-7-46.1, as Parker did in this case. See OCGA § 19-7-54 (b) (5) (F); *Baker v. Baker*, 276 Ga. 778, 782-783 (4) (582 SE2d 102) (2003). A prior judgment establishing paternity also can be set aside through an extraordinary motion for new trial based upon newly discovered evidence, but Parker did not file such a motion in this case. See *Roddenbery v. Roddenbery*, 255 Ga. 715, 715-717 (342 SE2d 464) (1986); *Cohen v. Nudelman*, 269 Ga. App. 517, 522 (2) (604 SE2d 580) (2004).

trial court denied the motion to set aside. Nevertheless, in the same order, the trial court required the parties to undergo genetic testing on the ground that it would be in the best interests of the child to establish whether Parker was the biological father.

1. On appeal, Venable argues that the trial court lacked authority to order the genetic testing, given the court's denial of Parker's motion to set aside the Paternity Acknowledgment and Final Order. We agree.

Under Georgia law, genetic testing can be ordered only in cases "in which the paternity of a child or children has not been established," OCGA § 19-7-43 (d), (e), and such testing cannot be required if the issue of paternity is res judicata. See *Dept. of Human Resources v. Hambrick*, 216 Ga. App. 606, 606-607 (455 SE2d 120) (1995); *Dept. of Human Resources v. Maddox*, 198 Ga. App. 650, 651 (402 SE2d 771) (1991); *Dept. of Human Resources v. Brown*, 196 Ga. App. 875, 875-876 (1) (397 SE2d 73) (1990). See also Dan E. McConaughey, Ga. Divorce, Alimony and Child Custody § 11:62 (2010-2011 ed.). As we have repeatedly held, "public policy is not advanced by the disestablishment of legitimacy and paternity." *In the Interest of T. W.*, 288 Ga. App. 386, 389 (1) (654 SE2d 218) (2007).

Here, the unappealed and unmodified Final Order, which was predicated on the settlement agreement and Paternity Acknowledgment expressly consented to by Parker, adjudged that Parker was the father of Venable's child. And while Parker moved to set aside the Final Order, the trial court found that Parker had failed to meet his burden in this regard and denied the motion. A judgment not void on its face is valid and binding upon the parties until set aside or reversed. See *Costello v. Costello*, 230 Ga. 40, 41 (195 SE2d 408) (1973); *State Auto Mut. Ins. Co. v. Relocation & Corporate Housing Svcs.*, 287 Ga. App. 575, 577 (1) (651 SE2d 829) (2007). "Thus, the application of the doctrine of res judicata clearly proscribe[d] the trial court's reconsideration of the issue of paternity. Accordingly, the trial court's order requiring that the [parties] submit to paternity blood testing [was] erroneous[.]" (Citations omitted.) *Brown*, 196 Ga. App. at 875-876 (1). See *Hambrick*, 216 Ga. App. at 606-607; *Maddox*, 198 Ga. App. at 651. See also *In the Interest of T. W.*, 288 Ga. App. at 388-389 (1) (trial court erred in ordering genetic testing where the parties had signed a voluntary acknowledgment of paternity that was duly recorded and had not been successfully challenged). We therefore must reverse the trial court's order to the extent that it required the parties to undergo genetic testing.

*Judgment reversed. Blackwell, J., concurs. Dillard, J., concurs fully and specially.*

DILLARD, Judge, concurring fully and specially.

I concur fully in the majority opinion. I do so with the understanding that our holding rests squarely on the fact that the trial court ordered genetic testing *after* it had already denied Venable's motion to set aside the Paternity Acknowledgment and Final Order, thus, leaving no basis for such a ruling.

As I understand it, our decision leaves open for another day whether a putative biological father might, in certain circumstances,[3] have standing to ask a court to compel genetic testing—before or contemporaneous with the filing of a motion challenging a judgment of paternity[4]—based upon a constitutional right to familial relations with the child, notwithstanding the lack of any statutory authority for doing so.

DECIDED FEBRUARY 16, 2011.

*Cauthorn, Nohr & O'Dell, Thomas E. Cauthorn III, Leslie A. Dean*, for appellant.

*Peggy L. Brown*, for appellee.

---

[3] *See Lehr v. Robertson*, 463 U. S. 248, 248 (103 SC 2985, 77 LE2d 614) (1983) (holding that "[w]here an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' his interest in personal contact with his child acquires substantial protection under the Due Process Clause" (citation omitted)).

[4] We have recognized two procedural vehicles by which a final paternity judgment may be challenged: (1) a motion to set aside paternity pursuant to OCGA § 19-7-54; and (2) an extraordinary motion for new trial based on newly discovered evidence. *See Roddenbery v. Roddenbery*, 255 Ga. 715, 715-17 (342 SE2d 464) (1986).