**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 5, 2012**

# In the Court of Appeals of Georgia

A12A0481. CARRIER CORPORATION. v. ROLLINS, INC.

A12A0482. ROLLINS, INC. v. CARRIER CORPORATION.

MIKELL, Presiding Judge.

These companion cases arise from a dispute in which Rollins, Inc., sued Carrier Corp. alleging damages for breach of contract and other claims related to Carrier's agreement to install a more than $2 million heating, ventilation, and air-conditioning ("HVAC") system at Rollins's headquarters. Carrier counterclaimed for unpaid invoices. The case went to trial, and the jury awarded Rollins $350,000 on its claims and awarded Carrier $88,000 on its counterclaim. Both parties appealed, and the cases have been consolidated for our review. In Case No. A12A0481, Carrier alleges that the trial court erred in denying its motions for a directed verdict; refusing to give certain jury charges; and awarding sanctions for Carrier's failure to comply with

discovery orders. In Case No. A12A0482, Rollins appeals from the judgment against it on Carrier's counterclaims, alleging that the trial court erred in its award of prejudgment interest. We affirm in Case No. A12A0481 and reverse in Case No. A12A0482.

"A jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law."[1]

Viewed in the light most favorable to the jury's verdict,[2] the record reflects that Rollins entered into several contracts with Carrier for the installation of an HVAC system at Rollins's corporate headquarters. Among those contracts were a March 11, 2005, 11-phase "Heating, Ventilation and Air Conditioning Renovation Plan" (the "HVAC contract" or "the contract") and a March 9, 2005, letter agreement that sets

---

[1] (Punctuation and footnote omitted.) *Defusco v. Free*, 287 Ga. App. 313, 316 (651 SE2d 458) (2007).

[2] *Horan v. Pirkle*, 197 Ga. App. 151, 152 (2) (397 SE2d 734) (1990).

forth items and services to be included in Carrier's bid on the project.[3] The HVAC system installed pursuant to the HVAC contract never functioned properly, with the result that Rollins's headquarters building was cold as a "meat locker" in one area and hot as "an oven" in another. Deficiencies included "significant temperature variations" in the chairman's office, "lack of sufficient return air out of the space," and a lack of heat in the winter so severe that Rollins's approximately 300 employees used more than 100 personal space heaters at their desks to stay warm. Despite Carrier's attempts at correction, the problems persisted. When Rollins, after paying more than $2 million for the system, eventually refused to pay additional Carrier invoices of about $61,000, Carrier sent notice that it was leaving the job effective December 2008. Rollins then hired another contractor to finish the work at an estimated cost of $702,000. Rollins filed this breach of contract action, and Carrier counterclaimed for the unpaid invoices.

---

[3] Rollins argues that this letter agreement, which contains no period of limitation, means the HVAC contract's one-year period of limitation does not apply, and instead is governed by OCGA § 9-3-24's six-year statutory period of limitation. However, this letter predates the March 11, 2005, HVAC contract. "[W]here parties enter into a final contract[,] all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." (Citations and punctuation omitted.) *Wallace v. Bock*, 279 Ga. 744, 745 (1) (620 SE2d 820) (2005).

1. On appeal, Carrier argues that the trial court erred in denying its motion for a directed verdict because Rollins's complaint was filed outside of the HVAC contract's one-year limitation period.

A trial court may grant a motion for directed verdict "only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict."[4] On appellate review of the denial of a motion for directed verdict, "we construe the evidence in the light most favorable to the verdict, and resolve any doubts or ambiguities in favor of the verdict."[5] We review the trial court's denial of a motion for a directed verdict using the "any evidence" standard.[6]

The HVAC contract provides that "[a]ny suits arising from the performance or non-performance of this Agreement, whether based upon contract, negligence, strict

---

[4] (Citation omitted.) *Clarendon Nat. Ins. Co. v. Johnson*, 293 Ga. App. 103, 104 (666 SE2d 567) (2008).

[5] (Citation omitted.) Id.

[6] *F.A.F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6) (1987).

liability or otherwise, shall be brought within one (1) year from the date the claim arose."[7]

Rollins filed an arbitration claim on February 17, 2009, and filed the complaint in this case on March 30, 2009. Carrier argues that although the term "the date the claim arose" is not defined in the HVAC contract, the time should be measured from the date of "substantial completion" of construction, which occurred about two years before Rollins filed suit. Specifically, Carrier argues that substantial completion occurred in March 2007, when its installation personnel left the job site, and that, therefore, Rollins's complaint was time-barred.

Rollins counters that its action was not time-barred because Carrier personnel continued to work at Rollins's headquarters, attempting to assess and fix the malfunctioning system, through at least December 2008, when Carrier sent its notice of termination. Rollins further argues that "substantial completion" is a statutory, rather than contractual, concept, that the term does not appear in the HVAC contract, and that it therefore has no bearing on the issue of the contractual limitation.

---

[7] While OCGA § 9-3-24 provides that "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable," it is well settled that limitation clauses reducing the time permitted to assert claims from six years to one year are enforceable. *Southern Telecom v. Level 3 Communications*, 295 Ga. App. 268, 273 (2) (671 SE2d 283) (2008).

5

Pursuant to the terms and conditions of the contract, Carrier agreed to provide Rollins with a "*complete operational system*,"[8] and further agreed that its "scope of work will include incidental work that is not specifically described but is required for *a complete operational system*."[9] The contract also provided that "[a]ny deficiencies that are identified by the owner's representative will be corrected before final system acceptance can be approved." While the record contains evidence that malfunctions occurred in a number of the phases of the contract, counsel for Carrier admitted at trial that Rollins never accepted the phase covering the executive areas of the building.[10] The contract provides that suit must be brought within one year of "the date the claim arose." Thus, the issue before us is, when did Rollins's claim against Carrier arise?

"When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful

---

[8] (Emphasis supplied.)

[9] (Emphasis supplied.)

[10] See *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 228 (1) (547 SE2d 637) (2001) (whole court) (statements of counsel during trial may be regarded as admissions in judicio).

result."[11] Generally, "a cause of action for breach of a construction contract accrues upon the project's substantial completion."[12] In the case sub judice, however, the contract does not contain the term "substantial completion," instead referring to a "complete operational system."

Evidence supports the jury's conclusion that Rollins's HVAC system was not a complete operational system because, for example, Rollins never accepted the phase of the contract covering its executive suites. Rollins's senior vice president, Michael Knottek, who signed the contract with Carrier, testified that there were "constantly problems with the thermostats in the executive area, where they would not maintain the setpoints." He further testified that when the rooftop unit in the executive meeting room turned on, the lights would dim in the board meeting room next door to the point where Knottek had to have a Carrier technician on-site to fix problems every time a board meeting occurred. Knottek also testified that executives and other workers had to be temporarily relocated to other parts of the building while problems were being fixed, and that rooftop cooling units, when examined by an outside

[11] (Citation and punctuation omitted.) *Wallace*, supra at 747 (2).

[12] (Citations omitted.) *Perkins v. M & M Office Holdings*, 303 Ga. App. 770, 774 (695 SE2d 82) (2010).

consultant, were found to be undersized. Asked if there were ever a month where the system functioned as a "complete operational system," Knottek responded, "No."

Bruce Burdon, general manager for Carrier's commercial business, also testified that the system was not complete: "We were at the final stages of completion of the project, and we were . . . in the executive area." In a letter to one of Rollins's executives dated September 24, 2008, Burdon proposed a plan of action and acknowledged problems with "system reliability associated with the control sequencing of the backup system," and the need to "maintain set point at all times." Another letter from Burdon to Knottek dated November 14, 2008, and referring to the September 24, 2008 letter, lists action items that have been "completed" and requests payment of invoices.

Rollins, which already had paid more than $2 million to Carrier, refused to pay $61,000 in invoices, arguing the system was still not complete or functional.

Burdon's testimony proved that the system was only in the "final stages of completion" and not, per se, complete. Further, Carrier's own letters mentioned above acknowledge that the system was not, in its view, "complete" prior to November 2008. Moreover, Rollins did not accept the executive phase of the project, and Carrier continued to work until terminating its relationship with Rollins in December 2008.

Until that time, Rollins could not have maintained a successful cause of action, as Carrier still was performing on the contract. Given that Rollins sought arbitration on February 17, 2009, and filed suit on March 30, 2009, it filed suit within the limitation period, and the trial court did not err in denying Carrier's motion for a directed verdict on this ground.

2. Carrier argues that the trial court erred in refusing to give its requested jury instruction regarding the date of "substantial completion" of the project, and in refusing to charge the jury on the contract's one-year period of limitation.

"In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review."[13]

> It is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error. Moreover, *a trial court does not err in refusing to give a requested charge that is not legally accurate and adjusted to the evidence*. A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence.[14]

---

[13] (Citation, punctuation and footnote omitted.) *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008).

[14] (Footnote omitted; emphasis in original.) *Johnson v. Leibel*, 307 Ga. App. 32, 41 (4) (703 SE2d 702) (2010).

Carrier's requested charge, in pertinent part, was:

> [W]hen a contract has a contractual period of limitations, like the one (1) year found in the March 11, 2005 contract, the Plaintiff cannot recover for any cause of action based on the contract that it did not bring within the contractually prescribed period. . . . The period of limitation on a construction contract commences on the date the work was *substantially complete.* I charge you that *substantial completion* is defined as the date when construction was *sufficiently completed, in accordance with the contract . . . , so that the owner could occupy the project for the use for which it was intended.*[15]

As set out in Division 1, "substantial completion" is not a term present in the HVAC contract. Where a contract's terms are plain and unambiguous, we are precluded from inserting new terms or provisions.[16] Further, as the evidence makes clear, Rollins was forced to relocate employees and executives temporarily, because the temperatures in portions of its building were not properly controlled, meaning that Rollins could not "occupy the project for the use for which it was intended." Given

---

[15] (Emphasis supplied.)

[16] See *Mull v. Mickey's Lumber &c.*, 218 Ga. App. 343, 346 (2) (461 SE2d 270) (1995) (courts may not revise contract terms while professing to construe them); *Tuzman v. Leventhal*, 174 Ga. App. 297, 300 (329 SE2d 610) (1985) ("This court may not create a modification of the plain terms of a contract by judicial fiat and then reverse a judgment on the basis of the court's own creation").

these facts, a charge in the form Carrier requested would be neither perfect in form nor adjusted to the evidence. We discern no reversible error.

3. Carrier contends that the trial court erred in denying its motion for a directed verdict on Rollins's claim for damages for breach of written warranty. Carrier argues that under the HVAC contract, "obligations to repair, replace, or issue credit for any defective parts, components or service shall be Customer's exclusive remedy," and that Rollins failed to provide written notice of any defective parts that Carrier refused to replace or otherwise correct.

The general verdict form used by the jury, however, conflates the issues of breach of contract and breach of warranty. This Court will not speculate on the findings of fact supporting a jury's verdict.[17] The trial court's judgment was correct as rendered, and the verdict of $350,000 is not illegal on its face. Carrier does not allege that it requested special findings or that it objected to the verdict form, and it has "therefore waived any complaint of deficiency in the verdict."[18]

---

[17] *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 357 (2) (b) (514 SE2d 691) (1999).

[18] (Citations omitted.) Id.

11

4. Carrier next alleges that the trial court erred in refusing to give a requested jury charge based on *Kent v. Hunt & Assocs.*[19] and two other cases.[20] The requested charge provided that if the jury found that Carrier had

> *fully complied with its obligation under the contract*, both as to the materials used and the manner of doing the work, then [Carrier] is not to be accountable for unsatisfactory results. . . . [W]here a construction contract provides that work shall be performed in accordance with certain details and specification, mutually agreed upon by both parties, and *the work is done in compliance with the terms of that contract*, the Plaintiff cannot recover.[21]

On appeal, Carrier argues that the court erred in failing to give the requested charge because three engineers testified that the HVAC system was installed in a workmanlike manner as called for in the contract.

A court is not required to "instruct in the exact language of a request, even though the request may be correct as an abstract principle of law which is directly

---

[19] 165 Ga. App. 169, 170 (3) (299 SE2d 123) (1983).

[20] *Bettis v. Comfort Control, Inc.*, 115 Ga. App. 104 (153 SE2d 678) (1967); *Bd. of Drainage Commrs. &c. v. Williams*, 34 Ga. App. 731, 735 (131 SE 911) (1925).

[21] (Emphasis supplied.)

12

applicable to a material issue."[22] Here, the trial court charged the jury, in pertinent part, that "[p]erformance of a contract, to be effectual, must be substantially in compliance with the spirit and the letter of the contract . . . [and] there is implied in every contract for work or services a duty to perform it skillfully and carefully." This instruction adequately explains the law given in the proposed charge.[23] Further, Carrier has not shown that the outcome would have been different had the jury been given its requested instruction, and therefore, any error was harmless.[24]

5. In its final enumeration, Carrier alleges that the trial court erred in awarding attorney fees as sanctions for Carrier's failure, despite court orders, to produce its president, Geraud Darnis, for deposition. For the reasons that follow, we affirm.

---

[22] (Citation and punctuation omitted.) *Harper v. Samples*, 164 Ga. App. 511, 514-515 (5, 6) (298 SE2d 29) (1982).

[23] See *Golden Peanut Co.*, supra at 227 (1).

[24] See *Buford-Clairmont Co. v. Radioshack Corp.*, 275 Ga. App. 802, 806 (4) (622 SE2d 14) (2005) (a party must show that trial court's refusal to give a requested charge was both erroneous and harmful).

"Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion."[25]

On December 2, 2010, the trial court issued a joint scheduling order providing that "the following depositions *must be taken* on or by January 10, 2011[:] . . . [Geraud] Darnis."[26] Rollins then noticed Darnis's deposition, but Carrier moved for a protective order, alleging that Darnis had no direct knowledge of the litigation. The court denied the motion, and the day before the scheduled deposition, Carrier e-mailed Rollins objecting to the date and promising to provide alternate dates. As a result, Rollins withdrew the deposition notice. Carrier then filed a motion for reconsideration. Carrier did not provide alternate dates, so while that motion was pending, Rollins noticed a videotape deposition of Darnis for January 3, 2011. Carrier moved to stay, objecting to the date. The trial court denied Carrier's motion for reconsideration. Carrier then filed another motion for a protective order, again objecting to the deposition date. Carrier did not produce Darnis for the noticed

---

[25] (Punctuation and footnote omitted.) *Flott v. Southeast Permanente Med. Group*, 274 Ga. App. 622, 623 (2) (617 SE2d 598) (2005).

[26] (Emphasis supplied.)

14

January 3, 2011, deposition. On March 25, 2011, after a hearing, the trial court denied Carrier's outstanding motion for a protective order, ordered Carrier to produce Darnis, and awarded attorney fees as sanctions under OCGA § 9-11-37 (b) (2).

(a) Carrier argues that an award of sanctions under OCGA § 9-11-37 (b) must be preceded by either the grant of a motion to compel under OCGA § 9-11-37 (a)[27] or an order limiting the parameters of the deposition under OCGA § 9-11-26 (c)[28] following the denial of a motion for a protective order. Here, neither type of order was entered. While it is true that sanctions under OCGA § 9-11-37 (b) comprise a two-step process, the steps are not as rigidly defined as Carrier suggests. Carrier relies upon *Joel v. Duet Holdings*,[29] but, even there, this court found no merit in the argument that in the absence of a motion to compel, imposition of sanctions was erroneous:

---

[27] *Wills v. McAuley*, 166 Ga. App. 4, 5-6 (2) (303 SE2d 26) (1983) (absent order to compel discovery pursuant to OCGA § 9-11-37 (a), imposition of sanctions not authorized under OCGA § 9-11-37 (b) (formerly Code Ann. §§ 81A-137 (a) and (b)).

[28] *Joel v. Duet Holdings*, 181 Ga. App. 705, 707 (353 SE2d 548) (1987) (sanctions allowed under OCGA § 9-11-37 (b) if the trial court has previously denied a motion for a protective order and ordered discovery under OCGA § 9-11-26 (c)).

[29] Id. at 706.

[t]he general scheme of OCGA § 9-11-37 . . . is that ordinarily sanctions can be applied only for a failure to comply with *an order* of the court. Thus when the discovery procedure itself requires a court order or *permits an order*[,] failure to obey the order can be punished immediately by any of the sanctions listed in Rule 37 (b).[30]

This court has upheld sanctions in instances where a party has violated orders, including discovery scheduling orders, other than those pursuant to OCGA §§ 9-11-37 (a) or 9-11-26 (c).[31] Although in those limited instances, the party's discovery violations were more egregious than here, so were the sanctions imposed; therefore, the same principles apply. Carrier further argues that the trial court had not ruled on its objection to the deposition date prior to imposing sanctions, but that argument is unavailing. Where the trial court has jurisdiction to issue an order, as here, and an

---

[30] (Citation and punctuation omitted; emphasis supplied.) Id. at 706-707.

[31] See *Gropper v. STO Corp.*, 276 Ga. App. 272, 275-276 (1) (623 SE2d 175) (2005) (sanction of dismissal upheld even absent motion to compel, where party's latest violation of discovery deadline order followed a long pattern of violating discovery orders); see also *Santora v. American Combustion*, 225 Ga. App. 771, 773 (1) (b) (485 SE2d 34) (1997) (sanction of dismissal authorized where party violated order setting discovery deadline and where party's violation of order requiring identification of privileged documents, which party concealed, was found equivalent to violation of motion to compel).

outstanding order exists–even if that order is erroneous, unlike in the case at bar–the order must be obeyed.[32]

(b) Carrier contends that it should not be required to pay attorney fees because it opposed the deposition on the basis that Darnis had no relevant personal knowledge of the case. OCGA § 9-11-37 (b) (2) provides that in lieu of or in addition to other sanctions permitted by the statute, "the court *shall require* the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the court finds that the failure was substantially justified* or that other circumstances make an award of expenses unjust."[33] Given the trial court's denial of Carrier's motions, it clearly did not find the failure "substantially justified." Further, since no transcript of the sanctions hearing appears in the record before us, "we must assume the trial court's action would be supported by the record."[34]

(c) Finally, Carrier contends that the amount awarded as attorney fees and expenses, $19,247.86, is excessive, because sanctions should be calculated only from

---

[32] *Ga. Cash America v. Strong*, 286 Ga. App. 405, 414 (5) (a) (649 SE2d 548) (2007).

[33] (Emphasis supplied.)

[34] (Citation and punctuation omitted.) *City of Atlanta v. Paulk*, 274 Ga. App. 10, 13 (1) (616 SE2d 210) (2005).

January 3, 2011, the date Darnis failed to appear for his last scheduled deposition, rather than the first noticed deposition. We disagree.

The measure of recovery under OCGA § 9-11-37 (b) is "reasonable expenses, including attorney's fees, caused by the failure" to obey court orders. In support of its argument, Carrier cites *Cohen v. Nudelman*,[35] which is inapposite. There, unlike in the case sub judice, the trial court failed to disclose the legal basis for its sanctions and the order itself indicated that the fee award did not relate solely to the expenses of the motion to compel.[36] Here, the trial court's order specifically indicates that it is based on OCGA § 9-11-37 (b); that the court reviewed the relevant billings; and that the sanctions relate not just to the original discovery order, but to the prior *orders* dating back to the first noticed deposition on December 17, 2010. Accordingly, we find no abuse of discretion.[37]

---

[35] 269 Ga. App. 517 (604 SE2d 580) (2004).

[36] Id. at 523 (5).

[37] Because we conclude that the sanctions at issue were within the discretion of the trial court under OCGA § 9-11-37 (b), we need not address Carrier's argument as to OCGA § 9-11-37 (d).

18

6. Rollins appeals from the judgment entered on the jury's verdict in favor of Carrier on its counterclaim for unpaid invoices, urging in two related enumerations of error that the trial court erred in granting Carrier prejudgment interest at 18 percent pursuant to OCGA § 7-4-16. Finding error, we reverse.

OCGA § 7-4-16 provides that "[t]he owner of a commercial account may charge interest on that portion of a commercial account which has been due and payable for 30 days or more at a rate not in excess of 1 ½ percent per month [18 percent per annum]." However, "[i]t is the law of this State that a recovery of pre-judgment interest pursuant to OCGA § 7-4-16 requires a *pre-trial invocation* of the applicability of that provision."[38]

Carrier posits that OCGA § 7-4-16 was invoked because *Rollins's* portion of the pretrial order mentions the statute. Carrier also argues that it invoked the statute because its invoices to Rollins state: "Carrier reserves the right to assess interests [sic] at the maximum rate allowable by law on amounts past due." We disagree.

---

[38] (Citations omitted; emphasis supplied.) *Gold Kist Peanuts v. Alberson*, 178 Ga. App. 253, 256 (2) (342 SE2d 694) (1986).

19

In the instant case, Rollins's mention of OCGA § 7-4-16 in the pretrial order appears under the heading "[s]pecial authorities relied upon by [Rollins] relating to peculiar evidentiary or other legal questions." Carrier's corresponding section in the pretrial order makes no mention of the statute. Carrier's damages section in the pretrial order requests only unspecified "prejudgment and postjudgment interest," listing no specific interest rate. Further, Carrier's counterclaim and two amended counterclaims all ask only for "interest at the legal rate." OCGA § 7-4-2 (a) (1) (A) provides that "[t]he legal rate of interest shall be 7 percent per annum" unless otherwise established by contract. Carrier's invoices do not specify a rate of interest accruing, as OCGA § 7-4-16 contemplates, when accounts are 30 days or more past due.

We have consistently held that "the request must *specify the interest rate* sought."[39] We have found that awards of interest under OCGA § 7-4-16 are appropriate where the exact rate of interest sought is specified in a contract, agreement, or invoice, or in a section of the pretrial order which specifically indicates

---

[39] (Citations omitted.) *Spears v. Allied Engineering Assocs.*, 186 Ga. App. 878, 879 (2) (368 SE2d 818) (1988).

which party seeks the interest; or where the aforementioned documents specifically referenced the statute.[40]

Further, where the rate of interest sought is ambiguous, an award of the maximum rate is not authorized. In *Spears*,[41] the plaintiff's complaint sought

> 'interest as allowed by Georgia law for *commercial accounts*' as part of its prayer for relief. By doing so, [the plaintiff] invoked OCGA § 7-4-16, but it *did not specify the exact rate . . .* it was not clear whether [the plaintiff] was seeking 1.5 percent interest per month, the maximum allowable rate for commercial accounts, or some lesser rate which also would have been proper under the statute. In the absence of such specificity, the trial court erred in entering judgment [against the defendant] for the maximum rate.[42]

---

[40] *Scovill Fasteners v. Northern Metals*, 303 Ga. App. 246, 252-253 (3) (692 SE2d 840) (2010) (prejudgment interest authorized under OCGA § 7-4-16 where claimant's invoices and complaint sought 18 percent per annum); *Owens v. McGee & Oxford*, 238 Ga. App. 497, 499 (1) (c) (518 SE2d 699) (1999) (contract provided for interest at 1 ½ percent per month); *Kroger Co. v. U. S. Foodservice of Atlanta*, 270 Ga. App. 525, 532 (4) (607 SE2d 177) (2004) (consolidated pretrial order "plainly indicated" which party sought prejudgment interest "pursuant to OCGA § 7-4-16 at the rate of 1.5% per month").

[41] Supra.

[42] (Citation omitted; emphasis supplied.) Id. at 879 (2).

21

We find similar ambiguity here. Carrier's invoices do not specify OCGA § 7-4-16; do not define the interest sought as that applicable to commercial accounts; and do not list a specific rate of interest. This ambiguity is further exacerbated by Carrier's specific requests for interest at the "legal rate" (7 percent) in its counterclaims. "If the *rate allowed under OCGA § 7-4-16* is sought before trial, the trial court is authorized to grant prejudgment interest at *that rate*."[43] If the specific rate, in this instance 18 percent per annum, is not sought, it cannot be granted.[44]

As we have not granted a retrial based on Carrier's appeal, we need not address Rollins's other enumeration of error.

7. We reverse and remand in Case No. A12A0482 to the trial court for proceedings not inconsistent with this opinion.

*Judgment affirmed in Case No. A12A0481. Miller and Blackwell, JJ., concur.*

*Judgment reversed and case remanded in Case No. A12A0482. Miller and Blackwell, JJ., concur.*

---

[43] (Citations omitted; emphasis supplied.)Id. at 878 (2).

[44]Although attorneys for both parties stipulated that the trial court would decide the applicable rate of interest on any amounts awarded to Carrier, we have held that "notwithstanding the seeming breadth of the stipulation, it cannot be construed in such a manner as to fix or change the law." *Gold Kist Peanuts*, supra at 256 (2) (citations and punctuation omitted).