A02A1530. CITY OF GAINESVILLE v. WATERS et al.
(574 SE2d 638)

BARNES, Judge.

Patsy and Gina Waters sued the City of Gainesville (the City) for damages and injunctive relief, claiming that the City failed to properly maintain the drainage system that serves their property.[1] Following a jury trial, Patsy Waters was awarded $122,000 in damages attributable to the nuisance, and both women were awarded $50,000 in attorney fees. The trial court also entered an order for injunctive relief directing the City to abate the nuisance. In several enumerations of error the City appeals the verdict, the denial of its motions for directed verdict and judgment notwithstanding the verdict (j.n.o.v.), and the injunction. Finding the City's enumerations meritless, we affirm.

Viewed in the light most supportive of the jury's verdict, the evidence shows that Patsy and Gina Waters are mother and daughter and jointly own a home located on Sunset Boulevard. Patsy Waters and her ex-husband purchased the house in 1964 and remodeled the basement in 1983 to add a bathroom and kitchen so that their daughter Gina could live there. They also added a second septic tank at that time. The Waterses divorced in 1986, and title was transferred to Patsy. Gina was later added as a joint title holder. Gina Waters testified that she never experienced any water-related problems with the property until 1992 when the City fire department repressurized the water lines. She testified that several water lines were broken at that time, which resulted in the first basement flooding incident, and that although the City sent someone out to repair the damaged water lines, she still experienced problems with flooding.

She testified that in October 1995, the septic tank backed up into the basement and she went home to help her mother deal with the damage. She further testified that when she arrived, Patsy Waters was "in a bad way, is the best way to describe it, emotionally, physi-

---

[1] This action was originally filed in 1996, but the Waterses voluntarily dismissed the claim without prejudice before trial.

cally. She was about to drop." She stated that her mother was soaking wet and appeared swollen, and that she was concerned for her mother's health. Gina Waters described an occasion when she and her mother observed that water flowing from a neighbor's draining pool flooded their front yard when it entered a "weir inlet," or catch basin, across the street from their home. She testified that the water was "spewing out of the bank" into their front yard. She further testified that as a result of the water problems, in addition to the flooding, they have numerous sinkholes in their yard caused by underground soil erosion.

The City finally placed a "riser" pipe in the septic tank to keep it from backing up into the house. Even though the Waterses have not experienced any flooding since the pipe was placed in the septic tank, the plumbing in the basement cannot be used because the contents of the septic tank would flow directly into the front yard. The basement is no longer usable as a separate residence.

An expert hired by the Waterses testified that the flooding problems were caused by water that entered an inlet on the opposite side of the street from the Waterses' yard, then infiltrated the drain field surrounding the septic tank, filling the septic tank, and forcing the water to back up into the basement. The expert further testified that the problem is caused by a buried 15-inch pipe that crosses under the Waterses' street and ends in the Waterses' yard. He concluded that the water comes "out of the 15-inch pipe and out of the ground and across the ground and then into the end of the drain field."

The City contends that the trial court erred in denying the directed verdict and j.n.o.v., arguing first that insufficient evidence supports a finding that the City had maintained a nuisance on the Waterses' property. It also contends that no evidence of damages supports the finding of an abatable nuisance; the statute of limitation barred the claim; and the Waterses were not entitled to attorney fees. The City also contends that the trial court erred in denying the j.n.o.v. because the motion in limine to exclude Dr. John Connell's testimony was improperly denied.

1. We will deal jointly with the trial court's denial of both the City's motion for directed verdict and its motion for j.n.o.v. because both arise from the same issues of law and fact and are governed by the same standards of appellate review. We apply the "any evidence" test to our review of the trial court's denial of a j.n.o.v. and affirm the trial court's ruling as long as there is some evidence to support the verdict. *Al & Zack Brown, Inc. v. Bullock*, 238 Ga. App. 246, 247 (518 SE2d 458) (1999). The City, therefore, must show "that there was no conflict in the evidence as to any material issue and that the evidence introduced, with all reasonable deductions therefrom, *demanded* a

verdict in [its] favor. [Cit.]" *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355-356 (1) (514 SE2d 691) (1999).

The City argues that the evidence showed only one incident of flooding in the Waterses' house and was therefore insufficient to support a nuisance claim. We do not agree.

"[W]here a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the *repeated* flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable." *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). The exercise of dominion or control over the property causing the harm is sufficient to establish nuisance liability. Id. at 339.

While it is undisputed that there were no incidents of flooding after October 17, 1995, Gina Waters testified about several incidents of flooding in the basement and on the property's grounds that occurred prior to October 17. A former co-worker of Patsy Waters testified that she either missed work or was late for work frequently between 1994 and 1996, especially during the rainy periods, because of flooding in her home.

The City does not dispute that it exercised dominion and control over the pipe or drainage system. Accordingly, because the Waterses presented evidence of repeated incidents of flooding to the Waterses' property sufficient to establish an abatable nuisance, the trial court did not err in denying the motion for directed verdict or j.n.o.v. on these grounds.

2. The City also argues that the Waterses did not put forth evidence of property damages resulting from an abatable nuisance, but only of the diminished market value of their home, which it maintains is evidence of permanent nuisance damage. It contends that the only evidence of property damages came from a real estate appraiser who testified that, as a result of the water damage, the Waterses' home had depreciated in fair market value approximately $8,500. The City maintains that because of the Waterses' failure to present evidence of diminished rental value to establish abatable nuisance damages, the trial court erred in instructing the jury on abatable nuisances, and denying its motions for directed verdict and j.n.o.v. on this ground.

Although the diminution of fair market value is the measure of property damages for permanent nuisance and lost rental value is the measure of property damages for abatable nuisance, *City of Warner Robins v. Holt*, 220 Ga. App. 794, 796 (2) (470 SE2d 238) (1996), property damages are not the only kind of damages available in a nuisance action. A plaintiff may also recover for damages to the person. OCGA § 41-1-4.

In a continuing, abatable nuisance case, the plaintiff is not limited to a recovery of rental value or market value; rather, he may recover any special damages whether the injury is of a temporary or a permanent nature. Unlawful interference with the right of the owner to enjoy possession of his property may be an element of damages. The measure of damages for "discomfort, loss of peace of mind, unhappiness and annoyance" of the plaintiff caused by the maintenance of a nuisance is for the enlightened conscience of the jury.

(Citations omitted.) *City of Columbus v. Myszka*, 246 Ga. 571, 573 (6) (272 SE2d 302) (1980).

In this case, the jury awarded Patsy Waters $122,000 in general damages. Because it was authorized to award Waters damages unrelated to the loss in rental value, we cannot go behind the jury's verdict to determine how the damages were apportioned. The City appears to argue that the existence of a claim for an abatable nuisance is *proved* by the diminished rental value, maintaining that "by offering only evidence of diminished market value, Appellees chose only to pursue a claim for a permanent nuisance." This argument confuses the issue of causation with the issue of damages and is simply not the law.

3. The City argues that because the nuisance was permanent, the Waterses' claim is barred by the statute of limitation. But because we have found the evidence supports the jury's finding of an abatable nuisance, this contention must fail.

Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

(Citation and punctuation omitted.) *Ga. Power Co. v. Moore*, 47 Ga. App. 411, 414-415 (3) (b) (170 SE 520) (1933). Further, "[i]n a continuing, abatable nuisance case, [OCGA § 9-3-30] does not preclude recovery for any damages save those which were suffered more than 4 years prior to the filing of the suit." (Citation and punctuation omitted.) *City of Columbus v. Myszka*, supra, 246 Ga. at 572 (2).

Because the Waterses filed this action in April 1998, the only claims barred are those suffered more than four years before that date. The Waterses sought to recover damages sustained after Sep-

tember 27, 1995.[2] Thus, contrary to the City's argument, the statute of limitation does not bar this claim. The cases cited by the City, *Macko v. City of Lawrenceville*, 231 Ga. App. 671, 674 (3) (499 SE2d 707) (1998), and *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 667 (1) (472 SE2d 499) (1996), are inapposite and do not require a different outcome because the claims in those cases were for permanent nuisances.

4. The City also argues that the trial court erred by denying its motions for a directed verdict and j.n.o.v. because the evidence did not support the award of attorney fees and, in the absence of bad faith, attorney fees are unsupported unless the evidence shows a lack of a bona fide controversy.

OCGA § 13-6-11 allows recovery of attorney fees if the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. "It is only necessary to the plaintiff's recovery that he show any one of these three conditions exists. Further, an award of attorney fees under OCGA § 13-6-11 is to be affirmed if there is any evidence to support it." (Citations and punctuation omitted.) *Southern Med. Corp. v. Willis*, 194 Ga. App. 773, 775 (4) (391 SE2d 803) (1990). "Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in . . . how defendant acted in his dealing with the plaintiff." (Citation and punctuation omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (c) (501 SE2d 30) (1998).

Generally, the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case. *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997). In *CSX Transp. v. West*, 240 Ga. App. 209, 211-212 (3) (a) (523 SE2d 63) (1999), we determined that bad faith existed where the defendant failed to maintain drainage control

---

[2] The trial court granted the City's motion for partial summary judgment, finding that the Waterses could only recover damages sustained during the six-month period before filing ante litem notices to the City. OCGA § 36-33-5 provides,

[w]ithin six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury. No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment.

OCGA § 36-33-5 (b). The trial court found that, based on the ante litem notices given, Patsy Waters could recover for damages sustained for the following periods: September 27, 1995, to March 26, 1996; April 9, 1997, to October 9, 1997; and October 17, 1997, to April 17, 1998. It determined that Gina Waters could recover for damages sustained from April 9, 1997, to October 9, 1997, and October 17, 1997, to April 17, 1998.

despite its knowledge that the plaintiff's property flooded as a result. In this case, there was some evidence that, despite the Waterses' numerous complaints and its knowledge that the Waterses' property flooded as a result of its failure to act, the City refused to alleviate the drainage problems. The trial court did not err in denying the City's motions for new trial and j.n.o.v.

5. Finally, the City contends that the trial court erred in denying the j.n.o.v. because the motion in limine to exclude the testimony of Dr. Connell should have been granted. We do not agree.

> In reviewing a trial court's decision on a motion in limine, we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *Davis v. State*, 226 Ga. App. 83, 84 (1) (485 SE2d 508) (1997).

In the present case the trial court denied the City's motion in limine, finding that, based on excerpts from Dr. Connell's deposition, the testimony was relevant to the issue of Patsy Waters' claim of emotional distress. We agree. Contrary to the City's argument that Dr. Connell's testimony showed that any stress was caused by the litigation rather than the nuisance, and therefore not compensable, our review of the evidence shows the following: Dr. Connell has a general psychiatry practice in Gainesville and began treating Patsy Waters in 1998. Dr. Connell testified that Waters was referred to him for a stress and anxiety evaluation because she was exhibiting symptoms such as intrusive thoughts and changes "in her pattern of behavior and a significant change in her focus in her life." Dr. Connell diagnosed her with post-traumatic stress disorder, which he testified is usually associated with severe emotional and physical trauma. Dr. Connell further testified that, in his opinion, Waters had suffered from the condition for four or five years with increasing intensity, and associated the condition with Waters' problems with her home and water drainage problems. When asked what he thought was the traumatic, stressful event that triggered Waters' post-traumatic stress disorder, Dr. Connell testified that "[s]he's had several traumatic stress events. The initial problems associated with the storm water drainage and the lack of resolution placed upon that, and basically her inability to see — to get any resolution in that setting." He confirmed that, under the definition of post-traumatic stress disorder, the threat to the integrity of the person can include a threat to

her environment, and in Waters' circumstances, "a threat to her property is a threat to her. She believes, even if water is shored up or an area has been shored up where water no longer intrudes — the fact that's a temporary solution to a permanent problem in her eyes leaves her with the continued belief that may occur again and again."

Accordingly, the evidence clearly belies the City's argument that Dr. Connell's testimony is irrelevant to the issue of emotional distress caused by the nuisance. As such, the trial court did not err in denying the motion in limine to exclude Dr. Connell's testimony.

To the extent that the City argues that the evidence shows that Patsy Waters' stress related to the water problem ended before she began her treatment with Dr. Connell, this was a disputed factual issue for the jury to resolve. "We will not weigh the evidence, and in fact are precluded from doing so." *Dumas & Assoc. v. Nalecz*, 249 Ga. App. 662, 663 (549 SE2d 730) (2001).

6. The City further argues that the trial court erred by not granting its amended motion for new trial based on newly discovered evidence of Cincinnati Insurance Company's subrogation interest.

On an extraordinary motion for a new trial based on newly discovered evidence, it is incumbent on the movant to satisfy the court: (1) that the newly discovered evidence has come to his knowledge since the trial; (2) that want of due diligence was not the reason that the evidence was not acquired sooner; (3) that the evidence was so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness is attached to the motion or its absence accounted for; and (6) that the new evidence does not operate solely to impeach the credit of a witness.

(Citation and punctuation omitted.) *Smith v. Dept. of Human Resources*, 226 Ga. App. 491, 493 (1) (487 SE2d 94) (1997). "All six requirements must be complied with to secure a new trial. [Cits.]" *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

Defendant's counsel verified by affidavit attached to the motion that he had received certain documents showing that on January 8, 2001, Cincinnati Insurance, the Waterses' homeowners insurance provider, issued a check to Patsy and Gina Waters in the amount of $9,442.36 for damage to their basement incurred on June 1, 1992. The Waterses, however, were precluded from recovering any damages suffered before September 27, 1995, in the present case. Therefore, Cincinnati Insurance cannot have a subrogation interest in damages for which the Waterses did not recover.

Further, the City does not demonstrate how the want of due dili-

gence on its part was not the reason that the evidence was not acquired sooner. Surely, if the Waterses had a claim pending with their homeowners insurance provider, such information could have been readily obtained through the discovery process.

"When a trial judge decides not to grant a motion for new trial [she] becomes the trier of fact, and [her] discretion in refusing the motion will not be disturbed unless manifestly abused. [Cit.]" *Fugarino v. State*, 243 Ga. App. 268, 270 (2) (531 SE2d 187) (2000). We find no abuse of discretion here and affirm the trial court's ruling.

7. Following a hearing, the trial court entered an abatement order instructing the City to "abate the nuisance of the flow of storm water onto [the Waterses'] property from Sunset Boulevard" by filling the pipe and inlet with grout or concrete and constructing a curb and gutter along the front of the Waterses' property. The City contends the trial court's grant of an injunction was an abuse of discretion. To support this contention, the City argues that, because the nuisance was permanent, injunctive relief is not a remedy. It also argues that the evidence is insufficient to support the finding of a nuisance.

These enumerations are meritless. In Division 1 we found that the evidence sufficiently supported the jury's determination that the City maintained an abatable nuisance. When a continuing nuisance is found, a property owner may obtain both damages and an injunction. *Dept. of Transp. v. Edwards*, 267 Ga. 733, 738 (4) (482 SE2d 260) (1997). The granting of an injunction is within the sound discretion of the trial court and should be tailored to the improper taking. OCGA § 9-5-8.

We ascertain no abuse of discretion.

8. In three final enumerations, the City argues that the court erred in refusing to give its requested charge regarding constructive notice and mitigation of damages and that the court erred in charging the jury on both permanent and abatable nuisances.

(a) The City contends that the trial court erred by refusing to instruct the jury on the law of constructive notice of the contents of recorded instruments affecting the property. It argues that, because the trial court refused the give the requested charges, the jury was prevented from considering whether the Waterses knew the pipe was discharging water when they purchased the house.

While the City may have established the existence of a pipe, it in no way demonstrated that the flooding nuisance existed at the time the Waterses moved into their home. In fact, the previous homeowner testified that he had the home built and knew about the pipe, but had never experienced problems with flooding. In declining to give the requested charges, the trial court observed that

> I want you both to make your exceptions, preserve your objections, but I want both of you to understand that I tried

to take what was a very confusing case, and certainly not clear from either side what exactly the issues were, and still not clear exactly, and make it as accurate and understandable to a jury as I possibly could. And that meant to me taking out some of the small things that — I felt like you asked for every detail to be charged on the law, and I just felt like that made it too confusing for the jury. ·

"In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citations and punctuation omitted.) *Lee v. Bartusek*, 205 Ga. App. 551 (1) (422 SE2d 570) (1992). We agree that the charge on constructive knowledge was unnecessary and potentially confusing and find no error in the trial court's decision.

(b) The City alleges that the trial court erred in failing to charge on the Waterses' duty to mitigate damages. We do not agree. On appeal, this Court considers the jury instructions as a whole to determine whether the charge contained error. *Lucas v. Love*, 238 Ga. App. 463, 464 (4) (519 SE2d 253) (1999).

Here, the evidence does not support a mitigation of damages charge because there is no evidence that mitigation of damages was possible, given the fact that the reason for the continued flooding could not be readily discovered and the problem was ongoing. The trial court did, however, instruct the jury on comparative negligence, stating that, "[i]f you find that the defendant was negligent and that the plaintiffs were also guilty of negligence which contributed to the plaintiffs' injuries and damages, and that plaintiffs' negligence was equal to or greater than that of the defendant, then the plaintiffs cannot recover."

Having reviewed the instruction in its entirety, we find that the charges adequately covered the relevant principles of law in a nuisance trial. Failure to give a requested charge in the exact language requested is not reversible error when the trial court accurately and fully charged the relevant law. *Wadkins v. Smallwood*, 243 Ga. App. 134, 140 (5) (a) (530 SE2d 498) (2000).

(c) The City enumerates as error the trial court's charge on abatable nuisance arguing that the evidence did not support this charge. Based on our decision in Division 1, this argument is meritless.

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 22, 2002

*Freeman, Mathis & Gary, T. Bart Gary, Stuart W. Gray*, for appellant.

*Curtis G. Shoemaker, J. David Burroughs*, for appellees.