[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13538

_____

PATRICIA HOLLAND,
the surviving mother of Kip Eugene Holland,
WAYNE HOLLAND,
Administrator of the estate of Kip Eugene Holland, deceased,

                                        Plaintiffs-Appellees,

*versus*

CYPRESS INSURANCE COMPANY,
KERI BELL,
Administrator of the Estate of James Wendell Harper,
deceased,

Defendants-Appellants,

JW HARPER FARMS, et al.,

Defendants.

───────────────────

Appeals from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 2:17-cv-00120-RWS

───────────────────

Before WILLIAM PRYOR, Chief Judge, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

This is an appeal of a jury verdict in favor of plaintiffs Patricia Holland and the estate of her son, Kip Holland (collectively referred to as "Holland"). Holland sued the estate of James Harper ("Harper") and his insurer, Cypress Insurance Company ("Cypress"), for negligence. In December 2016, Harper was driving a tractor-trailer when he veered off the road, causing the trailer to detach and then to strike and kill Kip Holland. A jury awarded Holland $13 million for wrongful death, $2 million for pain and suffering, and $29,363 in medical and funeral expenses. The jury also

found that Harper had acted in bad faith, necessitating a second phase of the trial on attorney fees. The jury then awarded Holland $6 million in attorney fees.

Harper and Cypress (collectively referred to as "Appellants") have appealed the jury verdict and damages awards, making five separate arguments. First, the district court erred by denying their motions for a directed verdict and motion for judgment notwithstanding the verdict ("JNOV") because Holland provided insufficient evidence that the accident resulted from anything other than an unforeseen medical emergency. Second, the $6 million attorney fee award must be vacated because (a) no evidence of bad faith justified the award and (b) even if there were bad faith, the amount of the award was unreasonable. Third, the $2 million pain and suffering award must be vacated because the district court improperly instructed the jury that it could award damages for "actual pain and suffering." Fourth, the entire verdict must be set aside because Cypress should not have been forced to appear as a named party at trial under Georgia's direct-action statutes. Fifth, the entire verdict must be set aside because Holland's attorney made an improper statement during his closing argument.

For the following reasons, we conclude that Appellants' arguments lack merit, except we express no opinion on the reasonableness of the amount of the attorney fee award. We affirm the judgment of the district court except with respect to the issue of the $6 million attorney fee award. Accordingly, we affirm the jury verdict and the damages awards for wrongful death, pain and

suffering, and medical and funeral expenses.  We also hold that there was sufficient evidence of bad faith to warrant a fee award under Georgia law.  But we vacate the $6 million attorney fee award for the district court to reconsider its reasonableness in light of two recent opinions from the Georgia Court of Appeals.

## I.

On December 8, 2016, Harper was driving a tractor-trailer in Gainesville, Georgia.  His daughter, Annette Bell, testified at trial that Harper had to end a phone call with Bell's stepmother that morning because he started coughing.  Scott Carpenter, who was driving behind Harper for the 1.5–2 miles before the crash, also testified at trial that Harper was driving "erratically, even to the point of one time crossing over into oncoming traffic" and running another truck "off the road into some gravel."  He said the tractor-trailer "[s]eemed to just have a hard time maintaining lane, it was making some jerky motions."  Eventually, the tractor-trailer overturned, causing the trailer to detach and to strike and kill Kip Holland.  A business's security camera recorded the wreck, and this footage showed that Kip Holland saw the trailer headed towards him before impact.  Lew–Anne MacArthur, who lived across the street but who did not see the crash, noticed Kip Holland's body on the ground behind the trailer several minutes after the wreck.  She and two other witnesses "heard him moan just once"; she "didn't know whether he was alive," though she said that "he didn't seem to be conscious."

Four months prior to the accident, on August 1, 2016, Harper completed a required Federal Motor Carrier Safety Administration ("FMCSA") Medical Examination to maintain his commercial driver's license. At that time, he filled out a Department of Transportation ("DOT") "Medical Examination Report Form." On that form, Harper concealed parts of his medical history, including a past brain aneurysm, lung disease (COPD), sleep apnea, chronic back pain, coughing fits, and blackouts. Harper's primary physician stated that he did not know Harper was a smoker, used a breathing machine in his truck, and had been hospitalized with COPD exacerbation on November 7, 2016. Based in part on his inaccurate DOT form, Dr. Larry Johnston cleared Harper to drive.

Harper also had a prescription for 120 pills of hydrocodone to be taken 4 times a day and refilled every 30 days. But on his DOT form, he said "No" in response to the question, "Are you currently taking medications." Bell testified at trial that Harper told her that he did not take hydrocodone before he drove but would take it on his off days and weekends. But she acknowledged that, based on Harper's notebook where he recorded his fuel stops, he drove approximately 9,000 miles during the month before the crash.

Holland sued Harper and Cypress in June 2017. Cypress was joined as a party-defendant under Georgia's direct-action statutes. *See* O.C.G.A. § 40-1-112(c) ("It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier,

whether arising in tort or contract."); *id.* § 40-2-140(d)(4) ("Any person having a cause of action, whether arising in tort or contract, under this Code section may join in the same cause of action the motor carrier and its insurance carrier.").

Before trial, Appellants filed a motion *in limine* seeking, in part, to suppress arguments about, and testimony concerning, Harper's liability insurance—particularly evidence regarding the dollar limit of Harper's policy. However, Appellants "stipulate[d]" that Cypress issued a policy to Harper and that "the policy goes into the record." Per Appellants' understanding of Georgia's direct-action statutes, "Cypress [was] a party solely to act as surety for a verdict against Mr. Harper's estate." They reiterated this view of Georgia's direct-action statutes at the pretrial conference. The district court granted this portion of Appellants' motion *in limine*. At trial, Appellants never objected that Holland's counsel violated this order.

The parties proceeded to trial on a single count of negligence for compensatory damages plus attorney fees under O.C.G.A. § 13-6-11 based on Harper's bad faith. After Holland's case rested, Appellants moved for a directed verdict on two issues: (1) no evidence was presented regarding Kip Holland's conscious pain and suffering because MacArthur testified that he was nonresponsive and (2) no evidence existed regarding Harper's bad faith, so attorney fees should not be awarded. After Appellants presented their case on the third day of the trial, they again moved for a directed verdict, this time on three issues. First, they reiterated their conscious pain and suffering argument, which the court rejected again.

Second, they argued for a directed verdict for Cypress because Holland failed to prove that the insurance policy Cypress issued to Harper was "on file with the appropriate state agency." According to Appellants, a 1987 Georgia Court of Appeals decision concerning a predecessor of § 40-1-112 required plaintiffs in direct-action cases to prove that the insurance policy existed and was on file with the appropriate state agency. *Glenn McClendon Trucking Co., Inc. v. Williams*, 359 S.E.2d 351 (Ga. Ct. App. 1987). Holland's counsel responded that the current direct-action statutes—which the Georgia legislature passed after 1987—eliminated this requirement. The district judge deferred ruling on this argument at the time, though he eventually rejected it.[1] Third, Appellants reraised their argument that bad faith did not exist, and the court rejected it again.

After the third day of trial, Appellants' counsel filed a letter with the court providing another argument for a directed verdict: Harper was an interstate carrier, but O.C.G.A. § 40-2-140 "is only appropriate to intrastate carriers." The letter also says, "Cypress is not asserting the defense that [Holland's] claims fail because Cypress did not file the certificate" because Appellants acknowledged that a "provision" in O.C.G.A. § 40-1-112 "eliminate[d] a loophole

---

[1] Appellants did not raise this argument (*i.e.*, that Holland failed to prove the insurance policy was filed with the appropriate state agency) in its post-verdict JNOV motion. The district court noted that Appellants "fail[ed] to fully develop this legal position" in their JNOV motion, so it found that Appellants had "abandoned the argument."

allowing an insurance company to violate the requirement to file a certificate to avoid direct action."[2]  It then quotes language from the Unified Carrier Registration Act of 2005 and says that language "preempts" O.C.G.A. § 40-1-112.  On the fourth day of trial, the district court accepted the letter into the record and rejected its additional argument.[3]

Before closing arguments on the fourth day of the trial, the parties discussed what stipulated facts should be read to the jury, at which time Appellants' counsel said, "I'm just concerned about unduly emphasizing liability insurance in this case."  Before Holland's closing argument, Appellants' counsel reiterated the argument from its motion *in limine* that Holland "cannot introduce the [insurance policy] limits in the case."  Appellants' main concern seemed to be that Holland's counsel would emphasize Cypress's presence at the trial; however, Appellants' counsel seemingly agreed that "it's appropriate if [Holland's counsel] wants to mention it's a direct action statute and the Court's going to charge [the

---

[2] Presumably, the "provision" that eliminated the loophole is the following sentence from O.C.G.A. § 40-1-112(a): "The failure to file any form required by the department shall not diminish the rights of any person to pursue an action directly against a motor carrier's insurer."  But the letter is far from clear on this point.

[3] The district court again rejected the additional argument in the letter (*i.e.*, that Harper was an interstate carrier, but O.C.G.A. § 40-2-140 only allowed direct actions against insurers of intrastate carriers) in its denial of Appellants' JNOV motion.

jury that Cypress is] a proper defendant and if your verdict's against Mr. Harper it's a verdict against the insurance company." The district court agreed and instructed Holland's counsel to "tread at your own risk," stating,

> You can't push the insurance matter. They are a party, you can state that they are responsible for any judgment in the case, I think that's fair game. But obviously policy limits is way out of bounds. But the fact that they are a party and that they are -- a judgment could be rendered against them and they're responsible for the judgment, that's fair game, okay?

Appellants' counsel voiced no objections to this.

In Holland's closing argument, counsel addressed the pain and suffering damages and pointed to (a) the two seconds in the video of the crash where Kip Holland saw the trailer hurtling towards him and (b) MacArthur's testimony that Kip Holland had moaned. Holland's counsel said, "That's pain and suffering, ladies and gentleman." He later said, "The fear, fright, shock of impact, the final two seconds of Kip Holland's life, . . . that fear, shock, fright of impact, his final two breaths, that's worth $2 million . . . ." He also told the jury, "Our burden is met. All we have to do is tilt the scale. Did Mr. Harper leave his lane of travel? Did Mr. Harper kill Kip Holland?" Defense counsel objected that this statement "misstates the law," to which the district court responded, "The Court will instruct the jury on the law and you will follow my instructions."

After closing arguments, the district court instructed the jury, *inter alia*, on pain and suffering damages:

> Pain and suffering is a legal item of damages. The measure is the enlightened conscience of fair and impartial jurors. Questions of whether, how much, and how long plaintiffs' decedent suffered are for you to decide. Pain and suffering includes mental suffering. In evaluating Kip Holland's pain and suffering, you may consider the following factors, if proven: fear, fright, shock of impact, actual pain and suffering, and mental anguish. There's no requirement that physical injury precede mental pain and suffering.

After dismissing the jury for deliberations, defense counsel objected to the court's pain and suffering instruction "based on [their] motion for directed verdict on no conscious pain and suffering." Defense counsel also reiterated their objection to bad faith attorney fees. He then motioned for mistrial (1) "on the basis of the liability insurance . . . on the basis of our motion for directed verdict"; (2) "on the attorney's fees"; and (3) because Holland's counsel "misstated the burden of proof, just saying all he's got to prove is the truck went off the road." The court denied that motion.

The jury found in Holland's favor; awarded the plaintiffs $13 million for wrongful death, $2 million for pain and suffering, and $29,363 for medical and funeral expenses; and found that Harper had acted in bad faith. Because of the bad faith finding, the court proceeded to a second phase of the trial to determine the amount

of attorney fees owed.  After hearing Holland's evidence concerning litigation expenses, the court instructed the jury,

> Based upon your finding of bad faith on the part of Defendant James Harper, the plaintiffs are entitled to recover their reasonable expenses of litigation.  The plaintiffs must prove by a preponderance of the evidence the actual cost of plaintiffs' attorney's fees and the reasonableness of those costs.

> A contingency fee agreement is a guidepost to the reasonable value of the services the lawyer performed.  However, you are not bound to that fee in your deliberations.  In addition to attorney's fees, plaintiffs may recover other costs reasonably incurred in the case.

Neither party objected to these instructions.  After deliberating, the jury awarded Holland $6 million in attorney fees.

After trial, Appellants filed a motion for JNOV or, in the alternative, for a new trial.  The district court rejected both Appellants' request for JNOV and request for a new trial.

## II.

We will now address each of Appellants' five arguments on appeal.  Four of the arguments lack merit.  And we express no view as to the merit of the fifth, the reasonableness of the attorney fees.

### A.    Negligence

Appellants' first argument is that Holland did not present sufficient evidence that the crash resulted from anything other than an unforeseen medical emergency. We review *de novo* a district court's denial of a motion for JNOV, "applying the same legal standard as the district court." *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006). "A [JNOV] is permissible only when, without weighing the credibility of witnesses, the facts and inferences point so strongly and overwhelmingly in favor of one party, that a reasonable jury could not arrive at a contrary verdict; where substantial conflicting evidence exists in the record, a [JNOV] is improper." *Rixey v. West Paces Ferry Hosp., Inc.*, 916 F.2d 608, 611 (11th Cir. 1990). "When deciding a motion for JNOV, the district court must view the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* When deciding whether the evidence overwhelmingly favors one party, "the judge is not permitted to weigh the evidence which has been introduced on both sides"; rather, "she is obliged to make a prior, more basic determination of whether any credible evidence has been proffered by the non-moving party." *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir. 1982).

We cannot conclude that "the facts and inferences point so strongly and overwhelmingly in favor of" Appellants such that the jury could not have found that Harper acted negligently. *Rixey*, 916 F.2d at 611. Indeed, the evidence of negligence seems

overwhelming. First, Carpenter, the eyewitness who was driving behind Harper, said Harper was driving "erratically" for at least 1.5–2 miles before the crash; he even crossed the center line "into oncoming traffic" and ran another truck "off the road." Second, in that 1.5–2-mile stretch of road, Harper had multiple opportunities to pull over, but he did not. Third, Harper lied on his DOT form about his medical history and use of prescription medication. Fourth, the jury could have reasonably concluded that Harper was taking hydrocodone while driving. He had a prescription for 120 pills to be taken 4 times a day, and there was evidence on the basis of which the jury could find that he refilled the prescription every 30 days. His daughter testified that he told her that he did not take his hydrocodone pills on the days he drove, but Harper's records indicate that he drove approximately 9,000 miles over the course of 16 days the month prior to the accident. The jury could reasonably conclude that Harper may have taken his hydrocodone pills while driving, notwithstanding his daughter's testimony to the contrary.

Appellants argue that Holland needed to prove a specific act of negligence beyond merely veering off the road. However, the case they cite for support merely says that a trial court "should clearly inform the jury that it is their duty to determine not only whether the act or acts were committed, but also, if committed, whether the same amounted to negligence." *Critser v. McFadden*, 593 S.E.2d 330, 332 (Ga. 2004) (quoting *Hughes v. Brown*, 136 S.E.2d 403, 404 (Ga. Ct. App. 1964)). Appellants cite no case

suggesting that a reasonable jury could not find negligence based on the foregoing facts. *See, e.g.*, *Metro. Atlanta Rapid Transit Auth. v. Morris*, 779 S.E.2d 726, 730 (Ga. Ct. App. 2015) (stating that evidence "that the bus driver failed to maintain his lane . . . was sufficient to establish negligence on the part of the driver").

At trial, Appellants argued that the accident was the result of an "act of God," which is an affirmative defense to liability under Georgia law. The district court determined that there was no basis to disturb the jury's implicit finding that Appellants failed to prove this affirmative defense. On appeal, Appellants argue that the district court erred because (a) Carpenter testified that Harper appeared to "have had a medical emergency" before the accident, (b) the Georgia Department of Public Safety crash report stated that Harper's condition at the time of crash was "ill (sick) or fainted," and (c) Harper's physicians testified that he did not have any preexisting conditions that would have made a sudden medical emergency foreseeable.

We agree with the district court. The "act of God" defense has three elements that Appellants must prove: the driver must have (i) suddenly and (ii) unforeseeably (iii) lost consciousness or control of the vehicle. *Lewis v. Smith*, 517 S.E.2d 538, 540 (Ga. Ct. App. 1999). Appellants' assertion of this defense boils down to speculation: because Holland has not proven what caused Harper's erratic driving—be it a coughing fit, black out, or drug use—the accident could not have "resulted from anything other than an

unforeseen medical emergency." Appellants confuse the burden of proof: "a defendant . . . may not rely upon an absence of evidence in the record disproving the affirmative defense but must carry the burden of affirmatively proving the defense." *Id.*

Appellants have not demonstrated even one element of the "act of God" defense. The evidence suggests that whatever caused Harper's negligent driving was not sudden. He drove for 1.5–2 miles in an erratic manner before the accident. Even if he suffered an unforeseeable medical emergency, a reasonable jury could have concluded that the emergency was not sudden. Such a finding would defeat the defense. *See id.* ("[E]ven if loss of consciousness was not foreseeable, it would still not be a complete defense if the evidence showed the loss of consciousness occurred, not suddenly, but in a manner that would have allowed a reasonable driver to take some action to avoid the ensuing accident.").

Moreover, Appellants' evidence does not "strongly and overwhelmingly" support their theory. *Rixey*, 916 F.2d at 611. They point to Carpenter's testimony and the Georgia Department of Public Safety crash report. Carpenter told the 911 operator that Harper appeared to "have had a medical emergency" based on his driving. However, Carpenter also testified that he initially did not call 911 upon seeing Harper's erratic driving because Harper could have been "on [his] cell phone or something like that." Even if we assume that Carpenter correctly inferred that Harper suffered a medical emergency (something we cannot do because we draw all

inferences in favor of the non-moving party), such evidence does not establish that it was sudden.

This reasoning equally applies to the crash report, which states that Harper's condition after the crash was "ill (sick) or fainted." Harper's condition after the crash does not prove that he suddenly lost consciousness before the crash; he could have been knocked unconscious during the crash. When reviewing a denial of JNOV, we draw "all reasonable inferences most favorable to the party opposed to the motion"—here, Holland. *Id.* Accordingly, neither the crash report nor Carpenter's testimony warrants a reversal of the jury verdict based on the "act of God" defense.

Additionally, even if Harper suddenly lost consciousness, Appellants have not shown that such a medical event was unforeseeable. They rely on the testimony of Harper's doctors that he "did not have any pre-existing conditions which would have made such a medical emergency foreseeable." However, Harper's primary physician did not know about the entirety of Harper's habits and medical situation. Even assuming there is some evidence of an unforeseen medical emergency, the evidence at least equally supports Holland's theory that it was caused by a coughing fit brought on by Harper's COPD, which he aggravated by smoking. For example, Bell testified that Harper had to end a phone call with Bell's stepmother the morning of the crash because he started coughing.

We conclude that the district court correctly denied Appellants' JNOV motion because they cannot prove that the evidence presented at trial "strongly and overwhelmingly" supports their

"act of God" defense. *Id.* This conclusion applies with equal force to the district court's denial of Appellants' alternative motion for a new trial, which we review for abuse of discretion. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1204 (11th Cir. 2020).

### B.        Bad Faith and Attorney Fees

Appellants' second argument is that the district court erred by denying their directed verdict motions and motion for JNOV on the attorney fees issue because (i) there was insufficient evidence of bad faith to justify attorney fees under O.C.G.A. § 13-6-11 and (ii) even if bad faith was shown, the $6 million award was unreasonable.

### i.      Sufficient evidence of bad faith existed.

Georgia law authorizes an award of attorney fees and litigation expenses "where the defendant has acted in bad faith." O.C.G.A. § 13-6-11. Georgia courts have defined bad faith as follows:

> Bad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive. Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will.

*Wilson v. Redmond Constr., Inc.*, 860 S.E.2d 118, 123 (Ga. Ct. App. 2021) (quoting *Metro. Atlanta Rapid Transit Auth. v. Mitchell*, 659 S.E.2d 605, 608 (Ga. Ct. App. 2007)). To justify an award of

attorney fees, the bad faith "must relate to the acts in the transaction itself prior to the litigation, not to the motive with which a party proceeds in the litigation." *David G. Brown, P.E., Inc. v. Kent*, 561 S.E.2d 89, 90 (Ga. 2002). Whether bad faith exists is a question for the jury, so an award of attorney fees under O.C.G.A. § 13-6-11 "is to be affirmed if there is any evidence to support it." *City of Gainesville v. Waters*, 574 S.E.2d 638, 644 (Ga. Ct. App. 2002) (quoting *S. Med. Corp. v. Willis*, 391 S.E.2d 803, 805 (Ga. Ct. App. 1990)).

The district court identified three grounds for the jury's finding of bad faith: (1) Harper's misrepresentations of his medical history on the DOT form, (2) his failure to pull over during the 1.5–2-mile stretch where he was driving erratically, and (3) evidence that Harper may have been taking hydrocodone while driving. We agree that each of these three grounds satisfies the "any evidence" standard. *Id.*

Appellants do not contest that Harper misrepresented his medical history on his DOT form. At trial, the jury heard evidence from Dr. Johnston's deposition. Dr. Johnston stated that the purpose of required medical examinations is to assess the driver's "ability to safely drive a vehicle." Harper's misrepresentation of his medical history, therefore, is evidence of bad faith under Georgia law. *See Windermere, Ltd. v. Bettes*, 438 S.E.2d 406, 409 (Ga. Ct. App. 1993) ("Evidence that appellants failed to comply with mandatory safety regulations promulgated for the benefit of appellees

20-13538                Opinion of the Court                19

is some evidence that appellants acted in bad faith in the transaction . . . .").

Appellants argue that even if Harper had fully disclosed his medical history, he still would have been certified to drive his truck commercially, so his misrepresentations were not a "cause" of the crash and therefore do not "arise[] out of the transaction on which the cause of action is predicated." *Wilson*, 860 S.E.2d at 122 (quoting *Waters*, 574 S.E.2d at 644). For at least two reasons, this argument is without merit. First, Dr. Johnston (who reviewed Harper's DOT medical examination form) testified that, although it is not clear that truthful answers on the form would have disqualified Harper, truthful answers would have triggered further investigation. A reasonable jury could find, on the basis of Dr. Johnston's testimony and the other evidence relating to Harper's medical conditions, that Harper would not have been certified to drive a tractor-trailer truck for an interstate motor carrier. Second, even assuming Appellants' argument that Harper might have been certified anyway, no Georgia case law holds that the bad faith acts must *cause* the events underlying the litigation in order to "relate to the acts in the transaction." *Kent*, 561 S.E.2d at 90. To the contrary, the Georgia Court of Appeals has upheld a jury finding of bad faith where a MARTA bus "fled the scene" after colliding with plaintiff's vehicle. *Morris*, 779 S.E.2d at 731–32. If Appellants' reading of the bad faith requirement were true, that case would have come out differently since fleeing the scene did not cause the crash.

Additionally, even if the bad faith acts must have caused the underlying accident, and even if Harper would have been certified to drive despite his medical history, the second and third grounds the district court cited independently satisfy the bad faith requirement. Harper drove erratically for 1.5–2 miles, and he could have safely pulled over at several points on that route. Appellants assert that his failure to pull over was caused by a medical emergency. But this is speculation: Harper drove erratically for 1.5–2 miles, and the jury reasonably could have found that he had the capacity to pull over but chose not to, constituting an act of "moral obliquity." *Wilson*, 860 S.E.2d at 123. And as already explained, the jury also could have found that Harper took hydrocodone the day of the crash; taking a narcotic and driving would plainly satisfy the bad faith standard.

Given the foregoing facts, Holland has more than satisfied the "any evidence" standard for us to uphold the jury's finding of bad faith. *Waters*, 574 S.E.2d at 644; *see also Am. Med. Transp. Grp., Inc. v. Glo-An, Inc.*, 509 S.E.2d 738, 741 (Ga. Ct. App. 1998) ("Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues.").

ii.    The district court must reconsider the reasonableness of the fee award in the light of intervening Georgia caselaw.

We will vacate the judgment of the district court to the extent it approved the jury's $6 million award of attorney fees. Under Georgia law, "an award of attorney fees is to be determined upon

evidence of the reasonable value of the professional services which underlie the claim for attorney fees." *Ga. Dep't of Corr. v. Couch*, 759 S.E.2d 804, 815–16 (Ga. 2014) (quoting *S. Cellular Telecom v. Banks*, 433 S.E.2d 606, 608 (Ga. Ct. App. 1993)). The jury awarded Holland's counsel $6 million in attorney fees, which matches what he would have earned as his contingency fee—40% of the $15 million verdict.

In *Couch*, the Supreme Court of Georgia addressed the weight courts may place upon a contingency fee agreement when calculating the "reasonable value" of attorney fees. *Id.* at 816. The court reasoned that the fee agreement is merely "a guidepost to the reasonable value of the services the lawyer performed" and does not "bind the opposing party required to pay the attorney fees, who had no role in negotiating the agreement." *Id.* In other words, a contingency fee agreement alone, "without more, is not sufficient to support the award of attorney fees"; rather, the party seeking fees must provide other evidence of the value of the professional services actually rendered. *Id.* (quoting *Brandenburg v. All-Fleet Refinishing, Inc.*, 555 S.E.2d 508, 512 (Ga. Ct. App. 2001)).

The Georgia Court of Appeals has recently decided two cases concerning the reasonableness of attorney fee awards. *Kennison v. Mayfield*, 856 S.E.2d 738 (Ga. Ct. App. 2021) (en banc); *Cajun Contractors, Inc. v. Peachtree Prop. Sub, LLC*, 861 S.E.2d 222 (Ga. Ct. App. 2021). Because the Georgia Court of Appeals issued these opinions after the district court denied Appellants' motion for JNOV, we vacate the $6 million attorney fee award and remand the

issue for the district court to reconsider the award's reasonableness in light of these recent cases. We will not comment on *Kennison* or *Cajun Contractors, Inc.* nor on the reasonableness of the attorney fee award in this case to avoid influencing the district court's reconsideration.

### C.    Pain and Suffering Damages

Appellants' third argument is that the $2 million pain and suffering award must be vacated because the district court improperly instructed the jury that it could award damages for "actual pain and suffering." Appellants point to the district court's instruction— "[i]n evaluating . . . pain and suffering, you may consider the following factors, if proven: fear, fright, shock of impact, actual pain and suffering, and mental anguish." Appellants argue that, because "actual pain and suffering" follows "fear" and other emotions that would precede impact, the reference to "actual pain and suffering" must refer to post-impact pain and suffering. But allowing the jury to find post-impact pain and suffering, Appellants argue, was error because there was no evidence that Holland was ever conscious post-impact.

Our standard of review for a district court's jury instructions is "deferential":

> [W]e examine "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." We will reverse the trial court because of an erroneous instruction only if we are "left with a substantial

and ineradicable doubt as to whether the jury was properly guided in its deliberations."

*Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1351 (11th Cir. 2004) (citations omitted) (quoting *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997)); *see also W. Air Lines, Inc. v. Criswell*, 472 U.S. 400, 420, 105 S. Ct. 2743, 2755 (1985) ("Jury instructions . . . 'may not be judged in artificial isolation,' but must be judged in the 'context of the overall charge' and the circumstances of the case." (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400 (1973))).

For several reasons, we do not entertain "a substantial and ineradicable doubt" as to whether the jury was properly guided by the district court's instruction on pain and suffering. The full text of the pain and suffering instruction was as follows:

> Pain and suffering is a legal item of damages. The measure is the enlightened conscience of fair and impartial jurors. Questions of whether, how much, and how long plaintiffs' decedent suffered are for you to decide. Pain and suffering includes mental suffering. In evaluating Kip Holland's pain and suffering, you may consider the following factors, if proven: fear, fright, shock of impact, actual pain and suffering, and mental anguish. There's no requirement that physical injury precede mental pain and suffering.

This mirrors Georgia's pattern jury instruction for pain and suffering damages. Council of Superior Ct. Judges of Ga., *Suggested Pattern Jury Instructions* 66.501 (5th ed. 2020). We reject Appellants'

argument that the "actual pain and suffering" language necessarily refers only to post-impact pain and suffering. The mere fact that the language follows "fear" and other pre-impact emotions—*i.e.*, the mere fact that the language is repetitive if it also includes pre-impact emotions—has little significance in light of the fact that the instruction is duplicative in several respects—*e.g.*, "fear" and "fright." "Actual pain and suffering," like the immediately following "mental anguish," pretty clearly includes both pre-impact and post-impact suffering. Georgia law distinguishes between pre- and post-impact pain and suffering, allowing damages awards for both if supported by the evidence (*e.g.*, consciousness). *Curtis v. United States*, 274 F. Supp. 3d 1366, 1380 (N.D. Ga. 2017); *Monk v. Dial*, 441 S.E.2d 857, 859 (Ga. Ct. App. 1994).

Although we acknowledge that the instruction allowed the jury to find, not only pre-impact pain and suffering, but also post-impact pain and suffering, we reject Appellants' argument that that creates reversible error. We reject Appellants' argument that there is no evidence to support a finding of post-impact pain and suffering. As the district court also noted, there is evidence justifying the jury's consideration of post-impact pain and suffering. Kip Holland "was unattended for some period of time immediately following the accident"; also, MacArthur heard him "moan at least once after she discovered him lying face down behind the tractor trailer." Under Georgia law, whether sufficient evidence existed to "prove[]" that Kip Holland experienced "actual pain and suffering" was for the jury to decide. *Walker v. Daniels*, 407 S.E.2d 70, 76

(Ga. Ct. App. 1991). Accordingly, the district court correctly concluded that there was "a legally sufficient basis to allow the jury to consider whether Mr. Holland remained conscious for a period of time, and whether or not he may have endured pain and suffering after the collision."

In any event, the district court clearly instructed the jury that pain and suffering is recoverable *only* "if proven." Thus, to the extent that the evidence of post-impact pain and suffering is weak, there would be little likelihood that the jury would deem it "proven." Of course, we assume that the jury followed the judge's instructions.

Finally, there was very strong evidence of pre-impact pain and suffering. The video which was played for the jury showed Kip Holland looking at the tractor-trailer proceeding directly into his path. Holland's counsel based his claim for pain and suffering damages squarely on this pre-impact experience. His closing argument described for the jury,

> The fear, fright, shock of impact, the final two seconds of Kip Holland's life, the final two breaths right there in the videos. Ladies and gentlemen, some seconds are worth a whole lot more than others and Kip Holland's life as he watched that 80,000-pound missile hurl toward him, that fear, shock, fright of impact, his final two breaths, that's worth $2 million, ladies and gentlemen.

This section of the closing argument references the video recording from a local business's security camera which showed that Kip Holland saw the trailer headed towards him before impact. Holland's counsel requested $2 million of pain and suffering damages based explicitly on the *pre-impact* fear Kip Holland experienced, and the jury awarded exactly that amount. Accordingly, the closing argument suggests that the $2 million jury award was based solely on Holland's pre-impact pain and suffering. For this reason also, we do not harbor "a substantial and ineradicable doubt" that the jury was improperly guided. *Bearint*, 389 F.3d at 1351.

For all the foregoing reasons, we cannot conclude that the district court's pain and suffering instruction misled the jury. We are not left with a "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.*

### D.    Georgia's Direct-Action Statutes

Appellants' fourth argument is that the verdict against Cypress must be set aside because Cypress should not have been forced to appear as a named party at trial under Georgia's direct-action statutes and that Harper is entitled to a new trial because Cypress's presence caused severe prejudice. They also argue that Georgia's direct-action statutes do not apply in this case. In response, Holland argues that Appellants abandoned any objection to, and even stipulated to, Cypress's presence at trial; that Georgia's direct-action statutes apply and allow insurers to appear as named defendants at trial; and that Appellants abandoned their argument that Georgia's direct-action statutes do not apply. We agree that

20-13538              Opinion of the Court              27

Appellants forfeited their arguments against (i) the direct-action statutes' applicability and (ii) Cypress's presence as a named defendant at trial.

Georgia has two direct action statutes: O.C.G.A. § 40-1-112(c) and O.C.G.A. § 40-2-140(d)(4). These statutes allow joinder of an insurer in a claim against the insured to "creat[e] automatic liability in favor of a third party who may have a claim for damages for the negligence of the [insured]." *Andrews v. Yellow Freight Sys., Inc.*, 421 S.E.2d 712, 713 (Ga. 1992). Appellants argue that Harper was an interstate carrier, so Holland cannot bring a direct action under § 40-1-112, which, according to Appellants, "applies only to intrastate trucking." However, they concede on appeal that § 40-2-140 applies to interstate carriers. *See Daily Underwriters of Am. v. Williams*, 841 S.E.2d 135, 138–39 (Ga. Ct. App. 2020) (physical precedent only) (stating that § 40-2-140 "authorize[s] direct actions against insurers of motor carriers engaged in interstate commerce"). However, they argue that it only allows direct actions against insurers "where the carrier has not registered as required by" the Unified Carrier Registration Agreement ("UCRA"), which is an interstate compact to coordinate the registration of motor carriers and commercial vehicles. In other words, Appellants argue that only causes of action implicating a violation of the registration requirement arise under § 40-2-140.

We first address Appellants' arguments concerning O.C.G.A. § 40-2-140. Their argument that it allows direct actions only for registration violations of the UCRA is plainly a new

argument raised for the first time on appeal. Appellants did not raise this argument in their oral motions for directed verdict or in their motion for JNOV. Before the district court, they argued that the direct-action statutes did not apply because Holland failed to prove that the insurance policy Cypress issued to Harper was "on file with the appropriate state agency." The district court rejected that argument before closing arguments, and Appellants did not raise it again in their motion for JNOV. The district court deemed the argument abandoned, *supra* note 1, and Appellants have not raised it on appeal.

Before the last day of trial, Appellants' counsel sent a letter to the district court arguing that Harper was an "interstate" motor carrier and that "direct action under section 40-2-140 is only appropriate to intrastate carriers." This contradicts their concession on appeal that § 40-2-140 "applies to interstate trucking." And at no point in their letter, in their motions for directed verdict and JNOV, or elsewhere in the district court did Appellants argue that § 40-2-140 allowed only direct actions for registration violations of the UCRA. Accordingly, they have forfeited that argument and cannot pursue it on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Because Appellants argue that Harper was an interstate carrier, and because they concede that § 40-2-140 allows direct actions against the insurers of interstate carriers, they cannot maintain that § 40-2-140 does not allow Holland to sue Cypress. Our conclusion with regard to § 40-2-140 makes addressing Appellants' arguments

concerning § 40-1-112 unnecessary because Holland can bring their suit against Cypress under either direct-action statute. *See Nat'l Indem. Co. v. Lariscy*, 835 S.E.2d 307, 311 (Ga. Ct. App. 2019) ("Georgia has codified statutory exceptions to this rule, the direct action statutes, which permit a direct action by an injured party against an insurance carrier which insures a motor carrier.").

Appellants final argument on appeal based on the direct-action statutes is that, even if the direct-action statutes apply, the district court improperly allowed Cypress to be a named defendant at trial, resulting in prejudice to Harper. Appellants forfeited this argument, too. Moreover, they stipulated to Cypress's presence at trial.

Appellants say that they "repeatedly objected to emphasizing the issue of insurance coverage to the jury." They point to four instances in the record: (1) their motion *in limine*, (2) statements at the pretrial conference, (3) their concerns raised during the charge conference at trial, and (4) their motions for directed verdict. But in none of these instances did Appellants make the argument they are making now: that even if the direct-action statutes apply, Cypress should not have appeared at trial as a named defendant or otherwise should have been hidden from the jury.

First, the motion *in limine* sought to suppress arguments about the dollar limit of Harper's insurance policy. Appellants acknowledged that "Cypress [was] a party solely to act as surety for a verdict against Mr. Harper's estate." The district court granted

this motion *in limine*, and Appellants never objected that Holland's counsel violated that order.

Second, at the pretrial conference, the parties were debating a motion *in limine* regarding a claim about spoliation of evidence, and Appellants' counsel reiterated his understanding of Georgia's direct-action statutes—*i.e.*, that they make Cypress "a surety in the case" and "eliminat[e] the step" where a plaintiff has to get a judgment against the tortfeasor before suing the insurance company. Nowhere in the pretrial conference transcripts do Appellants argue that Cypress's mere presence at trial should be precluded.

Third, at the charge conference, Appellants objected to instructing the jury that "Georgia law establishes an independent cause of action against a motor carrier's insured." They then clarified their position as follows: "I kind of want to discuss what's fair ground and what's not fair ground about arguing liability insurance, because our position is in a direct action case you just get to say, yeah, the defendant had insurance. Boom." They argued that a direct action does not "open the door for the plaintiffs to start arguing liability insurance" because it is prejudicial. The district court seemed to agree, and asked Appellants the following:

> I think the jury's entitled to know why are they here and what does this mean, what does our verdict mean in terms of against whom are we finding.
>
> I mean, you tell me how you want me to say it, but is it that if the defendants are liable, the insurance company's liable? You tell me how to say it. But

> otherwise the jury, the question I can foresee is how does the insurance company fit in with this? Because all the descriptions about negligence and fault and all those things are about Mr. Harper.

Appellants' counsel responded: "I guess if the Court were to say if the jury finds against Mr. Harper's estate, then the verdict will also be against Cypress Insurance Company. I think that's all we have to say. I'm just concerned that this paragraph is expansive and emphasizes liability insurance and that's our concern." Appellants' counsel even told the court, "I like what you just proposed." Based on this exchange, Appellants' concern was overemphasizing liability insurance, but they consented to the district court's informing the jury why Cypress was a defendant at the trial.

Fourth, in their opening brief on appeal, Appellants state that they "sought a mistrial because Cypress was not let out of the trial." Here's what Appellants actually said to the district court: "[W]e move for a mistrial on the basis of the liability insurance. That's on the basis of our motion for directed verdict." But the basis of their directed verdict motion was that Holland failed to prove that the insurance policy Cypress issued to Harper was "on file with the appropriate state agency," which they argued was a requirement under the direct-action statutes. As explained earlier, the district court rejected that argument, and Appellants abandoned it in their motion for JNOV. *Supra* note 1. Therefore, Appellants did not "[seek] a mistrial because Cypress was not let out of the trial"; that argument was never made in the district court.

Appellants have failed to identify an instance below where they argued that Cypress should not appear at trial at all. Moreover, they cannot point to a specific ruling of the district court that should be reversed. Appellants try to specify an erroneous decision in their reply brief: they say it was error for the district court to "plac[e] Cypress on the verdict form." But this belies their statements before the district court. When objecting to the charge that "Georgia law establishes an independent cause of action against a motor carrier's insured," they said, "If the Court finds that they're [*i.e.*, Cypress] a proper party, the verdict form takes care of that." Apart from failing to preserve the argument they are making on appeal, Appellants seemingly stipulated that if the district court found that the direct-action statutes applied, then it could list Cypress on the verdict form.

In summary, Appellants' argument that § 40-2-140 is limited to causes of action involving violations of the registration requirement was plainly raised for the first time on appeal and is therefore forfeited. Moreover, Appellants stipulated, at several points, to Cypress's presence at trial. They have not identified a single ruling of the district court that we should overturn. Accordingly, the district court did not commit reversible error by allowing Holland to bring a direct action against Cypress.

### E.    Closing Argument

Appellants' final argument is that the entire verdict must be vacated because it was tainted by an improper statement made during Holland's closing argument. During his closing argument,

Holland's counsel said the following: "So I want you to listen closely when the judge gives you instructions. Our burden is met. All we have to do is tilt the scale. Did Mr. Harper leave his lane of travel? Did Mr. Harper kill Kip Holland?" Appellants' counsel objected that this misstated the law, so the district judge told the jury, "The Court will instruct the jury on the law and you will follow my instructions." After closing arguments, Appellants moved for a mistrial because Holland's "counsel misstated the burden of proof, just saying all he's got to prove is the truck went off the road."

On appeal, Appellants reiterate their argument that Holland's counsel misstated the law because the jury must determine both whether the alleged acts were committed and also whether those acts amounted to negligence. Accordingly, it was error for Holland's counsel to say that all he had to prove was that Harper left his lane of travel and killed Kip Holland. Appellants assert that this misstatement was "extraordinarily prejudicial" because it amounted to an instruction for the jury to disregard Appellants' "act of God" defense. They further argue that the court's curative instruction to the jury did not sufficiently resolve the closing argument's prejudicial effect.

We review the denial of a motion for mistrial based on an improper closing argument for abuse of discretion. *See Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988) ("[T]he trial judge is given considerable discretion to control the tone of counsels' arguments and, absent an abuse of discretion, the decision of the trial

court, which has had the opportunity to hear the offensive remarks within the context of the argument and to view their effect on the jury, should not be disturbed."). We cannot conclude that Holland's counsel's closing statement incurably prejudiced the jury.

First, as we have already explained, Appellants have not established that counsel's statement was incorrect. *See Morris*, 779 S.E.2d at 730 (stating that evidence "that the bus driver failed to maintain his lane . . . was sufficient to establish negligence on the part of the driver"). Nor did the statement instruct the jury to disregard the "act of God" defense. Instead, counsel implied only that the evidence he mentioned would satisfy *Holland's* burden of proof (*i.e.,* "tilt the scale"). Second, to the extent that this statement misinformed the jury, the court cured that defect by telling them that the court would instruct them on the law and that they were to follow the court's instruction. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("A curative instruction purges the taint of a prejudicial remark because 'a jury is presumed to follow jury instructions.'" (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983))).[4] The district court later charged the jury

---

[4] Appellants try to distinguish *Simon* by saying that the court there gave "repeated" instructions whereas here the district court gave only a brief instruction on the elements of negligence. This argument ignores our presumption that the jury follows the court's instructions—whether given once or repeatedly. Significantly, the court's instruction was contemporaneous and thus was a forceful instruction to the jury that the court—not the attorneys—would tell the jury what the law was, including Holland's burden of proof.

on negligence law, and Appellants' counsel did not object to those instructions.  So even if Holland's counsel erroneously instructed the jury, we presume that the jury followed the correct charge from the court.

Appellants also argue that the district court's instruction was not sufficiently curative because the court did not "directly and explicitly address" Holland's counsel's misstatement.  But they have no support for this argument.  They cite one unpublished case that used the words "direct and explicit curative instruction" without saying that such an instruction is required to cure prejudice. *Wiedeman v. Canal Ins. Co.*, 770 F. App'x 497, 500 (11th Cir. 2019) (quoting *United States v. Perez*, 30 F.3d 1407, 1411 (11th Cir. 1994)).

To the extent that Holland's counsel's closing statement misstated the law, the district court's instruction that the jury was to follow its instruction on the law, and its later correct instruction on negligence, was sufficiently curative.  Therefore, the district court did not abuse its discretion by denying Appellants' motion for a mistrial on this basis.

## III.

To summarize, we conclude that the district court correctly denied Appellants' motions for directed verdict and motion for JNOV.  First, Holland presented sufficient evidence of negligence to the jury, and there is no basis to disturb the jury's implicit finding that Appellants failed to carry their burden of proof for the "act of

God" affirmative defense.  Second, the evidence adduced at trial also supported the jury's finding that Harper acted in bad faith, justifying an award of attorney fees under O.C.G.A. § 13-6-11.  Third, the district court properly instructed the jury on pain and suffering.  Fourth, Appellants raised their argument that O.C.G.A. § 40-2-140 allows direct actions against insurers only for a motor carrier's violation of the UCRA for the first time on appeal; accordingly, this argument is forfeited.  Moreover, Appellants forfeited any argument against, and even stipulated to, Cypress's presence as a named defendant at trial.  Fifth, to the extent Holland's counsel's closing argument misstated the law, the district court properly cured the same.

That said, we will vacate the judgment of the district court to the extent it approved the jury's $6 million attorney fee award. The Georgia Court of Appeals has recently issued two opinions concerning the reasonableness of attorney fee awards, and we remand the question of whether the $6 million attorney fee is reasonable for the district court to reconsider in light of those recent state court decisions.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**